Sol **DIAMOND** and **Muriel Diamond**,
Petitioners-Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE**, Respondent-Appellee.

No. 71–1760.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1972.

Decided Feb. 27, 1974.

Richard Weinberger, Chicago, Ill., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., John A. Townsend, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before KILEY, Senior Circuit Judge, and FAIRCHILD and SPRECHER, Circuit Judges.

FAIRCHILD, Circuit Judge.

This is an appeal from a decision of the Tax Court upholding the commissioner's assessment of deficiencies against Sol and Muriel Diamond [1] for the years 1961 and 1962. The deficiencies for each year were consolidated for trial, but are essentially unrelated. The Tax Court concluded that Diamond realized ordinary income on the receipt of a right to a share of profit or loss to be derived from a real estate venture (the 1962 partnership case), and that certain commission payments he made were not deductible business expenses (the 1961 commissions case). The facts in both cases appear in Diamond v. Commissioner, 56 T.C. 530 (1971). Unnecessary repetitions will be avoided.

*The 1962 Partnership Case.*

During 1961, Diamond was a mortgage broker. Philip Kargman had acquired for $25,000 the buyer's rights in a contract for the sale of an office building. Kargman asked Diamond to obtain a mortgage loan for the full $1,100,000 purchase price of the building. Diamond and Kargman agreed that Diamond would receive a 60% share of profit or loss of the venture if he arranged the financing.

Diamond succeeded in obtaining a $1,100,000 mortgage loan from Marshall

---

1. The Diamonds are husband and wife. Muriel Diamond's only role in the cases arises from her joint returns with her husband.

Savings and Loan. On December 15, 1961 Diamond and Kargman entered into an agreement which provided:

(1) The two were associated as joint venturers for 24 years (the life of the mortgage) unless earlier terminated by agreement or by sale;

(2) Kargman was to advance all cash needed for the purchase beyond the loan proceeds;

(3) Profits and losses would be divided, 40% to Kargman, 60% to Diamond;

(4) In event of sale, proceeds would be devoted first to repayment to Kargman of money supplied by him, and net profits thereafter would be divided 40% to Kargman, 60% to Diamond.

Early in 1962, Kargman and Diamond created an Illinois land trust to hold title to the property. The chief motivation for the land trust arrangement was apparently to insulate Diamond and Kargman from personal liability on the mortgage note.

The purchase proceeded as planned and closing took place on February 18, 1962. Kargman made cash outlays totalling $78,195.33 in connection with the purchase. Thus, under the terms of the agreement, the property would have to appreciate at least $78,195.33 before Diamond would have any equity in it.

Shortly after closing, it was proposed that Diamond would sell his interest and one Liederman would be substituted, except on a 50-50 basis. Liederman persuaded Diamond to sell his interest for $40,000. This sale was effectuated on March 8, 1962 by Diamond assigning his interest to Kargman for $40,000. Kargman in turn then conveyed a similar interest, except for 50-50 sharing, to Liederman for the same amount.

On their 1962 joint return, the Diamonds reported the March 8, 1962

$40,000 sale proceeds as a short term capital gain. This gain was offset by an unrelated short term capital loss. They reported no tax consequences from the February 18 receipt of the interest in the venture. Diamond's position is that his receipt of this type of interest in partnership is not taxable income although received in return for services. He relies on § 721 and Reg. § 1.721–1(b)(1).[2] He further argues that the subsequent sale of this interest produced a capital gain under § 741. The Tax Court held that the receipt of this type of interest in partnership in return for services is not within § 721 and is taxable under § 61 when received. The Tax Court valued the interest at $40,000 as of February 18, as evidenced by the sale for that amount three weeks later, on March 8.

Both the taxpayer and the Tax Court treated the venture as a partnership and purported to apply partnership income tax principles. It has been suggested that the record might have supported findings that there was in truth an employment or other relationship, other than partnership, and produced a similar result, but these findings were not made. See Cowan, The Diamond Case, 27 Tax Law Review 161 (1972). It has also been suggested (and argued, alternatively, by the government) that although on the face of the agreement Diamond appeared to receive only a right to share in profit (loss) to be derived, the value of the real estate may well have been substantially greater than the purchase price, so that Diamond may really have had an interest in capital, if the assets were properly valued. This finding was not made. The Tax Court, 56 T.C. at 547, n. 16, suggested the possibility that Diamond would not in any event be entitled to capital gains treatment of his sale of a right to receive income in the future, but did not decide the question.[3]

2. Citations are to the Internal Revenue Code of 1954 as amended (title 26 U.S.C.) and to the current regulations. Except as indicated, the current provisions are identical to those in effect during 1961 and 1962.

3. Because of the decision we reach, it is also unnecessary for us to consider this possibility and we express no conclusions concerning it.

Taking matters at face value, taxpayer received, on February 18, an interest in partnership, limited to a right to a share of profit (loss) to be derived. In discussion we shall refer to this interest either as his interest in partnership or a profit-share.

The Tax Court, with clearly adequate support, found that Diamond's interest in partnership had a market value of $40,000 on February 18. Taxpayer's analysis is that under the regulations the receipt of a profit-share February 18, albeit having a market value and being conferred in return for services, was not a taxable event, and that the entire proceeds of the March 8 sale were a capital gain. The Tax Court analysis was that the interest in partnership, albeit limited to a profit-share, was property worth $40,000, and taxpayer's acquisition, thereof on February 18 was compensation for services and ordinary income. Assuming that capital gain treatment at sale would have been appropriate, there was no gain because the sale was for the same amount.

There is no statute or regulation which expressly and particularly prescribes the income tax effect, or absence of one, at the moment a partner receives a profit-share in return for services. The Tax Court's holding rests upon the general principle that a valuable property interest received in return for services is compensation, and income. Taxpayer's argument is predicated upon an implication which his counsel, and others, have found in Reg. § 1.721–1(1)(b), but which need not, and the government argues should not, be found there.

26 U.S.C. § 721 is entitled "Nonrecognition of gain or loss on contribution," and provides: "No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." Only if, by a strained construction, "property" were said to include services, would § 721 say anything about the effect of furnishing services. It clearly deals with a contribution like Kargman's, of property, and prescribes that when he contributed his property, no gain or loss was recognized. It does not, of course, explicitly say that no income accrues to one who renders services and, in return, becomes a partner with a profit-share.

Reg. § 1.721–1 presumably explains and interprets § 721, perhaps to the extent of qualifying or limiting its meaning. Subsec. (b)(1), particularly relied on here, reads in part as follows:

"Normally, under local law, each partner is entitled to be repaid his contributions of money or other property to the partnership (at the value placed upon such property by the partnership at the time of the contribution) whether made at the formation of the partnership or subsequent thereto. To the extent that any of the partners gives up any part of his right to be repaid his contributions (as distinguished from a share in partnership profits) in favor of another partner as compensation for services (or in satisfaction of an obligation), section 721 does not apply. The value of an interest in such partnership capital so transferred to a partner as compensation for services constitutes income to the partner under section 61. . . ."

The quoted portion of the regulation may well be read, like § 721, as being directly addressed only to the consequences of a contribution of money or other property. It asserts that when a partner making such contributions transfers to another some part of the contributing partner's right to be repaid, in order to compensate the other for services or to satisfy an obligation to the other, § 721 does not apply, there is recognition of gain or loss to the contributing partner, and there is income to the partner who receives, as compensation for services, part of the right to be repaid.

The regulation does not specify that if a partner contributing property agrees that, in return for services, another

shall be a partner with a profit-share only, the value of the profit-share is not income to the recipient. An implication to that effect, such as is relied on by taxpayer, would have to rest on the proposition that the regulation was meant to be all inclusive as to when gain or loss would be recognized or income would exist as a consequence of the contribution of property to a partnership and disposition of the partnership interests. It would have to appear, in order to sustain such implication, that the existence of income by reason of a creation of a profit-share, immediately having a determinable market value, in favor of a partner would be inconsistent with the result specified in the regulation.

We do not find this implication in our own reading of the regulation. It becomes necessary to consider the substantial consensus of commentators in favor of the principle claimed to be implied and to look to judicial interpretation, legislative history, administrative interpretation, and policy considerations to determine whether the implication is justified.

*The Commentators:* There is a startling degree of unanimity that the conferral of a profit-share as compensation for services is not income at the time of the conferral, although little by way of explanation of why this should be so, or analysis of statute or regulation to show that it is prescribed. See publications cited pp. 181–2 of Cowan, The Diamond Case.[4]

One of the most unequivocal statements, with an explanation in terms of practicality or policy, was made by Arthur Willis in a text:

"However obliquely the proposition is stated in the regulations, it is clear that a partner who receives only an interest in future profits of the partnership as compensation for services is not required to report the receipt of his partnership interest as taxable income. The rationale is twofold. In the first place, the present value of a right to participate in future profits is usually too conjectural to be subject to valuation. In the second place, the service partner is taxable on his distributive share of partnership income as it is realized by the partnership. If he were taxed on the present value of the right to receive his share of future partnership income, either he would be taxed twice, or the value of his right to participate in partnership income must be amortized over some period of time."[5]

*Judicial Interpretation:* Except for one statement by the Tax Court no decision cited by the parties or found by us appears squarely to reach the question, either on principle in the absence of the regulations, or by application of the regulations. In a footnote in Herman M. Hale, 24 T.C.M. 1497, 1502 (1965) the Tax Court said: "Under the regulations, the mere receipt of a partnership interest in future profits does not create any tax liability. Sec. 1.721–1(b), Income Tax Regs." There was no explanation of how this conclusion was derived from the regulations.

*Legislative History:* The legislative history is equivocal.

An advisory group appointed in 1956 to review the regulations evidently felt concern about whether the provision of Reg. § 1.721–1 that the value of an interest in capital transferred to a partner in compensation for services constitutes income had a statutory basis in the light of § 721 providing that there shall be no recognition of gain or loss in the case of a contribution of property. The group proposed enactment of a new section to

---

4. See also Halperin & Tucker, Low Income Housing (FHA 236) Programs: One of Few Tax Shelter Opportunities Left, 36 J. Taxation 2, 5–6 (1972) ; Research Institute of America, Tax Coordinator B–1210.1, Developments 15,010; Surrey & Warren, Federal Income Taxation: Cases and Materials (1964 Supp. to 1960 ed.), p. 146.

5. Willis on Partnership Taxation 84–85 (1971). See Cowan, The Diamond Case, 27 Tax Law Review 181 n. 56 (1972).

provide such basis, and legislation introduced into the 86th Congress in 1959 incorporated this recommendation. The bill, H.R. 9662, would have created a new § 770 providing specifically for the taxation of a person receiving an interest in partnership capital in exchange for the performance of services for the partnership. However, neither proposed § 770 nor anything else in H.R. 9662 dealt with the receipt merely of a profit-share. The lack of concern over an income tax impact when only a profit-share was conferred might imply an opinion that such conferring of a profit-share would not be taxable under any circumstances, or might imply an opinion that it would be income or not under § 61 depending upon whether it had a determinable market value or not.

Several statements in the course of the hearings and committee reports paralleled the first parenthetical phrase in Reg. § 1.721–1(b) and were to the effect that the provision did not apply where a person received only a profit-share.[6] There was, however, at least one specific statement by the chairman of the advisory group (Mr. Willis) that if the service partner "were to receive merely an interest in future profits in exchange for his services, he would have no immediate taxable gain because he would be taxed on his share of income as it was earned."[7] H.R. 9662 passed the House of Representatives, and was favorably reported to the Senate by its finance committee, but never came to a vote in the Senate. Even had the bill become law, it would not have dealt expressly with the problem at hand.

*Administrative Interpretation:* We are unaware of instances in which the Commissioner has asserted delinquencies where a taxpayer who received a profit-share with determinable market value in return for services failed to report the value as income, or has otherwise acted consistently with the Tax Court decision in *Diamond.* Although the consensus referred to earlier appears to exist, the Commissioner has not by regulation or otherwise acted affirmatively to reject it, and in a sense might be said to have agreed by silence.

*Consideration of partnership principles or practices:* There must be wide variation in the degree to which a profit-share created in favor of a partner who has or will render service has determinable market value at the moment of creation. Surely in many if not the typical situations it will have only speculative value, if any.

In the present case, taxpayer's services had all been rendered, and the prospect of earnings from the real estate under Kargman's management was evidently very good. The profit-share had determinable market value.

If the present decision be sound, then the question will always arise, whenever a profit-share is created or augmented, whether it has a market value capable of determination. Will the existence of this question be unduly burdensome on those who choose to do business under the partnership form?

Each partner determines his income tax by taking into account his distributive share of the taxable income of the partnership. 26 U.S.C. § 702. Taxpayer's position here is that he was entitled to defer income taxation on the compensation for his services except as partnership earnings were realized. If a partner is taxed on the determinable market value of a profit-share at the time it is created in his favor, and is also taxed on his full share of earnings as realized, there will arguably be double taxation, avoidable by permitting him to amortize the value which was originally treated as income. Does the absence of a recognized procedure for amortization mili-

---

6. See, *e. g.*, Senate Rep.No.1616, 86th Cong., 2d Sess. 117 (1960).

7. See Hearings on Advisory Group Recommendations on Subchapters C, J, and K of the Internal Revenue Code before the House Comm. on Ways and Means, 86th Cong., 1st Sess. 53 (1959).

tate against the treatment of the creation of the profit-share as income?

Do the disadvantages of treating the creation of the profit-share as income in those instances where it has a determinable market value at that time outweigh the desirability of imposing a tax at the time the taxpayer has received an interest with determinable market value as compensation for services?

■ We think, of course, that the resolution of these practical questions makes clearly desirable the promulgation of appropriate regulations, to achieve a degree of certainty. But in the absence of regulation, we think it sound policy to defer to the expertise of the Commissioner and the Judges of the Tax Court, and to sustain their decision that the receipt of a profit-share with determinable market value is income.

■ Diamond's final argument in the 1962 partnership case is that he is entitled under § 702 to a deduction not claimed on his return: his share of the partnership's loss resulting from unamortized loan expense. The Tax Court rejected the claim because the record failed to show whether there was income during the period prior to the sale, and thus failed to establish the existence and amount of partnership loss.[8]

Apparently the Tax Court understood that Diamond was referring to the $33,000 paid to the lender as unamortized loan expense. In this court, Diamond argues that the figure should be $73,000, theorizing that if the value of his profit-share at the time of creation was $40,000, and compensation to him for services to the partnership, $40,000 should also be added to the unamortized loan expense.

Whichever figure may be appropriate, we agree with the Tax Court's reasoning, noting also that there are additional reasons why Diamond is not entitled to a deduction for a share of partnership unamortized loan expense: (1) The sale of petitioner's interest did not effect a termination under § 708(b)(1)(B). Petitioner was entitled to a 60 percent share only after restoration to Kargman of $78,195.33. Even if the value of Diamond's interest was $40,000, it was substantially less than 50 percent of the total interest in partnership capital and profits. (2) If statutory termination were to have occurred, it would have taken place after and not before the sale. The unamortized loan expenses would have passed to the new partners and the new partnership, not to petitioner. Reg. § 1.708–1(b)(1)(iv).

### The 1961 Commissions Case.

■ Before 1961 Diamond had earned his living as a builder. In the course of this activity he became acquainted with Henry Moravec, Jr. and Henry Moravec, Sr., the principal officers of Marshall Savings and Loan. The Moravecs suggested that Diamond serve as a mortgage broker for Marshall. Diamond was to find builders in need of funds and arrange for them to receive loans from Marshall. Diamond would charge the builders a fee for arranging these loans. However, he paid a portion of these fees to the Moravecs. During 1961, Diamond received commissions totaling $145,186.37 and remitted $39,398.-50 to the Moravecs.

On his 1961 return, Diamond included $145,186.37 in income but deducted the $39,398.50 as an ordinary and necessary business expense. Alternatively, he now maintains that the $39,398.50 should not have been included in gross income in the first place because he received these fees merely as a conduit for the Moravecs.

The Tax Court considered and rejected both the deduction and the conduit theories.[9] The court found that Diamond had failed to prove that he had received this money as a conduit and not under a claim of right. The court also found that Diamond had failed to prove that this type of payment to the lender's officers was ordinary and necessary.

---

8. 56 T.C. 547–548.

9. Id. 540–43.

The findings were not clearly erroneous and the Tax Court's conclusions therefrom were correct.

The judgments of the Tax Court in both the 1962 partnership and the 1961 commissions case are affirmed.