JOHN J. WELLS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOHN J. WELLS and CARMEN WELLS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
John J. Wells, Inc. v. Commissioner
Docket Nos. 4690-80, 4691-80.
United States Tax Court
T.C. Memo 1984-79; 1984 Tax Ct. Memo LEXIS 595; 47 T.C.M. (CCH) 1114; T.C.M. (RIA) 84079; February 16, 1984. *595 Taxpayer corporation paid large sums to an employee who was blackmailing the principal shareholder. Held, such payments are not deductible to the corporation as there is no evidence that such payments were "ordinary and necessary." However, the payments are not constructive dividends to shareholder. Held further, the cost of supplies provided by one corporation controlled by the individual taxpayer to another corporation owned by him without payment therefor did constitute constructive dividend to shareholder. *596 Richard L. Carico, for the petitioners. William E. Bonano and Charlotte Mitchell, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated December 31, 1979, respondent determined the following deficiencies in the individual petitioners', John J. Wells and Carmen Wells, Federal income taxes: Addition to tax
Year
Deficiency
pursuant to sec. 6653(b)
1972
$19,295.96
$9,647.98
1973
20,323.86
10,180.26
1974
1,564.28
1,106.84
By notice of deficiency dated December 31, 1979, respondent determined the following deficiencies in the corporate petitioner's, John J. Wells, Inc., Federal income taxes: Addition to tax
Year
Deficiency
pursuant to sec. 6653(b)
1972
$22,680.00
$13,620.65
1973
27,958.93
13,979.47
1974
1,325.35
662.68
After concessions, [1] the issues for decision are: (1) whether payments by John J. Wells, Inc. to one Kenneth Del Grande were blackmail payments and, if so, whether petitioner John J. Wells, Inc. may deduct such payments; (2) whether petitioners John and Carmen Wells must include these payments in their *597 income as constructive receipts, and (3) whether the provision of money and supplies by John J. Wells, Inc. to Tororana Farms, Inc. constituted constructive dividends to individual petitioners John J. and Carmen Wells. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners John J. Wells (hereinafter Wells or John Wells) and Carmen Wells are husband and wife and resided in Hayward, California at the time the petition in docket No. 4691-80 was filed. They filed joint Federal income tax returns for the taxable years 1972, 1973, and 1974 with the Internal Revenue Service, Fresno, California. Petitioner John J. Wells, Inc. (hereinafter Wells, *598 Inc.) is a California corporation with its principal place of business at Fremont, California at the time the petition in docket No. 4690-80 was filed. It filed Federal corporate income tax returns for the taxable years 1972, 1973 and 1974 with the Internal Revenue Service, Fresno, California. Prior to April 3, 1972, petitioner Wells operated an exterior trim business as a sole proprietor under the name "John J. Wells Exterior Trim." Wells contributed the proprietorship assets to Wells, Inc. which was incorporated on April 3, 1972 and of which Wells was the president and sole shareholder. Wells' business was building stairs and supplying Western red cedar for exterior trim. In the course of his business, Wells required access to customers' homes in order to repair stairs. In September of 1971, Wells employed Kenneth Del Grande (hereinafter Del Grande) to do janitorial work in the evenings and put him on the regular payroll in February or March of 1972. Del Grande worked for Wells until July or August of 1976.During that time, Del Grande achieved the position of foreman and his duties included routing, assembling and installing stairs, and supervising the yard. Wells let *599 Del Grande use his Master Charge card. Del Grande used the card to make personal purchases and then reimbursed Wells. In September 1976 Del Grande acquired the lease on Wells' business premises and operated the business himself. Early in 1972, Wells submitted an application for a contractor's license to the State of California. In this application, Wells inserted a page explaining that he had been convicted of burglary two times between 1940 and 1950. Wells assembled the application on a Friday evening and left it on his desk overnight. The following Monday, Del Grande, having seen the application, threatened to disclose to Wells' customers and friends the fact that Wells had been convicted of burglary unless Wells paid for Del Grande's silence. Wells began paying Del Grande with checks drawn on his personal account, and then Wells used his corporate account. Wells falsified his records creating the appearance that the payments to Del Grande were bona fide business payments. Wells deducted these payments. The Wells, Inc. cash disbursements journal contains entries purportedly reflecting payments for business purposes totaling $5,094.75 and $2,080 for 1972 and 1973, *600 respectively. The listed payee for each of these entries is fictitious.The name of each true payee was erased, and then Wells inserted the name of a fictitious payee. The checks represented by these journal entries were either payable to Kenneth Del Grande or to cash. The checks payable to cash bear the endorsement of Del Grande. Also, Wells, Inc. deducted amounts ostensibly representing purchases from a "Murdock Lumber Sales Company" in the amounts of $4,243.79, $42,955.62 and $24,597.70 for the years 1972, 1973 and 1974, respectively. The books and records of Wells, Inc. reflect 53 transactions involving purchases from "Murdock Lumber Sales." These transactions are reflected in the cash disbursements journals of Wells, Inc. as payment to "Murdock Lumber Sales" and for each transaction there is an invoice and cancelled check. Del Grande negotiated all of the checks drawn with respect to the Murdock Lumber Sales transactions. Del Grande also wrote, where it appears, the endorsement "Jim Murdock" on these checks. Both Jim Murdock and Murdock Lumber Sales are fictitious. Wells, Inc. purchased no materials or supplies from such person or business during the years at issue. Instead, *601 Del Grande received the money as payment for his silence with respect to the burglary convictions. Tororana Farms, Inc. (hereinafter Tororana), a California corporation, was incorporated in March 1972 for the purpose of breeding and raising bullfrogs for commercial use. Wells was a director of Tororana. On August 15, 1972, Wells became secretary-treasurer of Tororana, and he received 150 shares of stock out of a total of 340 issued shares in Tororana. He held the largest amount of stock. The owner of the second largest amount of stock owned 40 shares. During 1973 Tororana's board of directors authorized an issuance of additional shares. Wells and his wife were to receive 248 of the 495 additional shares issued for cash. During 1972 and 1973, Wells, Inc. provided supplies and materials to Tororana for which it received no consideration. The value of these supplies and materials was $21,958.42 in 1972 and $4,048.72 in 1973. The Wells, Inc. books and records reflected these items as "cost of goods sold," "manufacturing supplies," "purchases," or "delivery expense." A check dated December 16, 1980 in the amount of $2,683.36 was issued as part of the distribution of the liquidation *602 proceeds in connection with the dissolution of Tororana. This check was made payable to John J. and Carmen Wells. OPINION The circumstances in this case are somewhat bizarre. While obviously the true facts can never be known with complete certainty by an outsider, we find that Del Grande was blackmailing Wells. We base our conclusion upon our view of the spoken testimony and how that testimony, coupled with the documentary evidence, comports with human experience. We find Wells' version of what happened to be, in the main, far more probable than Del Grande's. Having decided that Del Grande was blackmailing Wells, we must decide whether Wells, Inc. may deduct these payments. The deductibility of these payments in dependent upon the general requirements of section 162(a), I.R.C. 1954, which allows as a deduction all "ordinary and necessary expenses" paid during the taxable year in the carrying on of a trade or business. First, we address whether the payments made by Wells, Inc. during the years in question were "ordinary." In Welch v. Helvering,290 U.S. 111, 113-114 (1933), the Supreme Court stated-- what is ordinary, though there must always be a *603 strain of constancy within it, is none the less a variable affected by time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. * * * The situation is unique in the life of the individual affected, but not in the life of the group, the community, of which he is a part. At such times there are norms of conduct that help to stabilize our judgment, and make it certain and objective. The instance is not erratic, but is brought within a known type. In Deputy v. du Pont,308 U.S. 488, 495 (1940), the Supreme Court further stated that "[o]rdinary has the connotation of normal, usual or customary." It explained that although the expense may be unique in the taxpayer's lifetime, the transaction giving rise to it "must be of common or frequent occurrence in the type of business involved." Deputy v. du Pont,supra, at 495. In the case of Lilly v. Commissioner,343 U.S. 90 (1952), taxpayers engaged in the optical business. Pursuant to agreements reflecting an established and widespread practice in that industry, *604 these taxpayers paid to the respective doctors who prescribed eyeglasses, which such taxpayers sold, one-third of the retail sales price received upon the sale. The Supreme Court applied the traditional "ordinary and necessary" standard in determining the deductibility of these payments. The Court stated that-- [t]he payments to the doctors were made by petitioners monthly in the regular course of their business. Under the long-established practice in the optical industry in the localities where petitioners did business, these payments, in 1943 and 1944, were normal, usual and customary in size and character. The transactions from which they arose were of common or frequent occurrence in the type of business involved. They reflected a nationwide practice. Consequently, they were "ordinary" in the generally accepted meaning of that word. [Lilly v. Commissioner,343 U.S. at 93, footnote reference omitted.] Thus, a necessary touchstone for deductibility of a payment under section 162 is that such payment must be "of common or frequent occurrence in the type of business involved." See Diamond v. Commissioner,56 T.C. 530, 542-543 (1971), *605 affd. 492 F.2d 286 (7th Cir. 1974). Thus, unless a taxpayer presents reliable evidence that payments arise out of arrangements or practices common in the relevant business, he cannot meet the "ordinary" requirement of section 162. Frederick Steel Co. v. Commissioner,42 T.C. 13, 25 (1964), revd. on other grounds 375 F.2d 351 (6th Cir. 1967); Reffett v. Commissioner,39 T.C. 869, 879 (1963). In the instant case, there is no evidence indicating that Wells, Inc.'s blackmail payments to Del Grande during the years in question were a customary practice in the construction business generally, or in the stair building and cedar supply businesses specifically. Accordingly, Wells, Inc. may not deduct the payments to Del Grande pursuant to Del Grande's threat to expose Well's criminal background. The next issue for decision is whether the blackmail payments constituted constructive dividends to John Wells. The mere fact that the payments are not deductible does not automatically result in a constructive dividend to the shareholder. Palo Alto Town and Country Village, Inc. v. Commissioner,565 F.2d 1388, 1391 (9th Cir. 1977); *606 Ashby v. Commissioner,50 T.C. 409, 418 (1968). These expenses must also represent an economic gain or benefit to the shareholder. Palo Alto Town and Country Village, Inc. v. Commissioner,supra at 1391; United States v. Gotcher,401 F.2d 118, 121-124 (5th Cir. 1968). [2] Under the facts of this case, Wells, Inc. paid money to Del Grande in order to prevent him from disclosing the facts of John Wells' burglary convictions to Wells, Inc. customers. John Wells was closely associated with the corporation. The corporation bore his name. Wells himself dealt with his customers. The nature of the business of building and repairing stairs was such as to require that Wells have ready access into his customers' homes. Clearly, such customers might be very reluctant to permit Wells access to their homes if they knew of his history as a burglar. We are satisfied that the payments to Del Grande did not benefit Wells personally, but rather protected the business of Wells, Inc. and, therefore, we hold that these payments were not constructive dividends to John Wells. *607 The remaining issues for consideration concern the provision of supplies by Wells, Inc. to Tororana. There was no evidence that Wells, Inc. had any interest whatsoever in Tororana other than that its sole shareholder John Wells also owned stock in Tororana. Transfers between corporations with a common shareholder may result in constructive dividends to such shareholder if the transfer was "primarily for his benefit and if he received a direct or tangible benefit therefrom." Gilbert v. Commissioner,74 T.C. 60, 64 (1980); Rapid Electric Co. v. Commissioner,61 T.C. 232, 239 (1973). Relevant considerations are the business purpose of the transaction and the intent of the parties engaging in it. Schwartz v. Commissioner,69 T.C. 877, 884 (1978). If the transfer in fact is a bona fide loan, or if the benefit to the taxpayer is derivative or quite indirect, there is no constructive dividend. Joseph Lupowitz Sons, Inc. v. Commissioner,497 F.2d 862, 868 (3d Cir. 1974), affg. in part, revg. in part a Memorandum Opinion of this Court; Rushing v. Commissioner,52 T.C. 888, 894 (1969), affd. on another *608 issue 441 F.2d 593 (5th Cir. 1971). The issues of existence of a loan or the nature of the benefit to the shareholder are issues of fact and turn upon the circumstances of the particular case. See Schwartz v. Commissioner,supra at 884. The burden of proof is on the petitioners, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
An analysis of these factors leads inescapably to the conclusion that the transfer of materials and supplies from Wells, inc. to Tororana constituted a constructive dividend to Wells. The evidence reveals no business purpose on the part of Wells, Inc. in making these transfers. Notwithstanding Wells' testimony to the contrary, there is no evidence that Wells, Inc. rather than Wells owned stock in Tororana. The Tororana stock certificate was issued to John Wells rather than Wells, Inc. The Tororana corporate records reflect that stock was issued to John and Carmen Wells and not Wells, Inc. Finally, upon the liquidation of Tororana, the liquidation proceeds were paid by check issued to John and Carmen Wells, and there is no evidence that this check was *609 ever deposited into a Wells, Inc. account, or that Wells, Inc. ever received the proceeds of this check. We have a situation where the transferor corporation, Wells, Inc., lost control of the transferred property, while the shareholder, John Wells, retained control over the property as shareholder, director and officer in Tororana. See Sammons v. Commissioner,472 F.2d 449, 451 (5th Cir. 1972), affg. in part and revg. in part a Memorandum Opinion of this Court. Htere was no evidence that the provision of these supplies and materials constituted a loan. Petitioners provided no documentary evidence of any kind indicating a loan. Indeed, the Wells, Inc. books and records reflect an attempt to obscure the fact that Wells, Inc. was providing Toroana with these supplies in the first place, let alone an attempt to indicate a loan with the expectation of repayment. There is no evidence that Wells, Inc. received any return such as interest or repayment of principal in the years following 1972 and 1973 when the transfers occurred. Thus, there is no proof that these transfers protected or improved the value of a Wells, Inc. asset such as stock, or comprised a loan. *610 Furthermore, there is no evidence of any other business purpose on the part of Wells, Inc. in engaging in these transfers. Wells, Inc. received no compensation for the transfer, nor is there evidence that such a receipt was ever intended. There is no proof that Wells, Inc. was protecting a valuable customer, Rapid Electric Co. v. Commissioner, supra at 240. There is no indication of how Tororana's development of a successful bullfrog farm would somehow provide Wells, Inc. with additional patronage. Cf. Rushing v. Commissioner,supra at 894. With respect to the individual petitioner, there was a direct benefit. His artifice, if successful, would have allowed him to use the Wells, Inc. earnings and profits in order to provide Tororana, another corporation in which he had a significant investment, with supplies and materials without paying the tax which would have resulted from withdrawing the earnings from Wells, Inc. Additionally, we see no reason why the expense of providing supplies to Tororana was ordinary and necessary to the business of Wells, Inc.Accordingly, we hold that Wells, Inc. may not deduct these expenses. In accordance *611 with the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. At trial the corporate petitioner, John J. Wells, Inc., and the individual petitioner John J. Wells conceded the sec. 6653(b), I.R.C. 1954↩, additions to tax for fraud for the years at issue. In addition, respondent conceded that the individual petitioner Carmen Wells is an innocent spouse as defined in sec. 6013(e) with respect to all items of omitted income in issue for the years 1972, 1973 and 1974.
2. See Uranga v. Commissioner,T.C. Memo. 1983-373↩.