T.C. Memo. 1999-393


UNITED STATES TAX COURT


ELEAZAR C. FLORES, JR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10176-98.                Filed December 3, 1999.


Richard B. Gould, for petitioner.

Gordon P. Sanz, for respondent.


MEMORANDUM OPINION


JACOBS, Judge:  Respondent determined a $34,534 deficiency in petitioner's 1993 Federal income tax and a $6,503 accuracy-related penalty pursuant to section 6662(a).

Following concessions, the issues remaining for decision are: (1) Whether petitioner had $99,880 of unreported income for 1993;

and if so, (2) whether petitioner is liable for the section 6662(a) accuracy-related penalty.

All section references are to the Internal Revenue Code as in effect for the year under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

<u>Background</u>[1]

At the time he filed his petition, petitioner resided in Brookshire, Texas. Petitioner and his wife, Maria, filed separate Federal income tax returns for 1993.

Petitioner was born and raised in Mercedes, Texas, which is located between Brownsville, Texas, and the Mexican border. Mercedes is approximately 320 miles south of Brookshire. Harlingen, Texas, a suburb of Mercedes, is located approximately 20 to 25 miles north of the Mexican border.

During 1993, petitioner was a self-employed truck driver, hauling rock, sand, and gravel for road building and housing sites.

<u>Abel</u>

Petitioner testified that (approximately 12 years ago) he met an individual he knew only as Abel at a "beer joint" in Mercedes; they became friends and customarily (approximately once a week) drank beer and played pool. Petitioner did not know where Abel

---

[1] Some of the facts have been stipulated and are found accordingly. The stipulations of facts and the exhibits submitted therewith are incorporated herein by this reference.

lived. The last time petitioner and Abel had contact was on November 9, 1993.

Receipt of the Cash

According to petitioner, on November 9, 1993, Abel went to petitioner's home in Brookshire and requested petitioner to transport a significant amount of money for him to Mercedes. Petitioner agreed to do so; he neither questioned Abel as to the source of the money nor asked for anything in return for transporting the money. Only Abel and petitioner were present when this meeting took place.

Abel told petitioner that he was going to Houston and in a couple of days would pass through Mercedes, at which time he would meet petitioner and retrieve the money. Abel gave no specific details regarding the time or place where they would meet, other than that he would locate petitioner by recognizing petitioner's truck outside the beer joint. Petitioner agreed to transport the money as a favor to Abel.

Abel gave petitioner several tightly wrapped bundles of U.S. currency, which in the aggregate totaled $99,880. Each bundle was several inches thick and contained currency in multiple denominations. Abel cautioned petitioner not to show the money to anyone. Accordingly, petitioner decided to place the money in a spare tire that was mounted under the rear of his 1991 Chevy pickup truck.

Petitioner took the spare tire to a local truck stop where he had the rubber tire separated from the metal rim.  Upon his return from the truck stop, petitioner placed the bundles of money inside the spare tire and reattached the metal rim to the tire.  Not wanting to leave the money unattended, petitioner brought the reassembled spare tire into his house.  Prior to leaving for Mercedes the next morning, petitioner remounted and padlocked the reassembled spare tire under the frame of his truck.

Petitioner's Trip to Mercedes and Subsequent Events

Petitioner left for Mercedes on the morning of November 10, 1993. Petitioner's friends, Ronald Waller and Marcia Miller, accompanied petitioner to Mercedes; they did not know of the existence of the money hidden in the spare tire.

That afternoon, petitioner was stopped near Harlingen by Officer Sergio Ramirez, Jr. (Officer Ramirez) of the Texas Department of Public Safety (DPS) for failing to drive in a single marked lane.  Upon approaching the vehicle, Officer Ramirez noticed that petitioner appeared nervous; consequently, Officer Ramirez asked petitioner to step out of the truck. Petitioner complied and told Officer Ramirez that he was going to Mercedes to purchase recapped tires for an 18-wheeler.  Petitioner later changed his story, informing Officer Ramirez that the "real" purpose of his trip was to visit his sick mother. Officer Ramirez became

suspicious and requested petitioner's consent to search the vehicle, a request agreed to by petitioner.

A visual examination of petitioner's pickup truck led Officer Ramirez to believe that the truck's spare tire had been altered. As a result, Officer Ramirez asked petitioner to follow him to a nearby DPS building so that a more intensive search could be undertaken. Again, petitioner complied. At the DPS station, a border patrol canine conducted a search of petitioner's truck and "alerted" the officers to the spare tire. After petitioner provided the key for the padlock, the officers removed the spare tire from its bracket and discovered the money. Petitioner told Officer Ramirez that he did not know how the money got into the spare tire.

Before leaving the DPS station, petitioner and his two passengers (Mr. Waller and Ms. Miller) each executed a Waiver of Citation, Interest, and Release, disclaiming any interest in the $99,880. On November 14, 1993, petitioner again disavowed any ownership interest in the $99,880, and provided a voluntary written statement to investigators concerning the existence of Abel and the circumstances surrounding the receipt of the money. Petitioner was neither arrested nor charged in connection with possessing stolen currency. Abel has never been located or identified by DPS authorities. No one has claimed the money. The $99,880 was eventually forfeited as contraband to the State of Texas.

Petitioner filed an income tax return for 1993; the $99,880 was not reported.

Notice of Deficiency

In the notice of deficiency, respondent determined that petitioner had $99,880 of unreported income. Respondent also determined that petitioner was liable for the section 6662(a) accuracy-related penalty for 1993.

### Discussion

Issue 1: Petitioner's Unreported Income

The primary issue, i.e., whether petitioner had $99,880 of unreported income in 1993, is a question of fact. Petitioner claims that the $99,880 did not belong to him and therefore is not includable in his gross income. Respondent posits that because petitioner had dominion and control over the forfeited funds and could not prove that he held the funds merely as an agent or conduit for Abel, the proceeds represent taxable income to him.

Gross income, as used in section 61(a), means the accrual of some gain, profit, or benefit to the taxpayer, over which the taxpayer exercises dominion and control. See James v. United States, 366 U.S. 213, 219 (1961); Arcia v. Commissioner, T.C. Memo. 1998-178; Liddy v. Commissioner, T.C. Memo. 1985-107, affd. 808 F.2d 312 (4th Cir. 1986). In this regard, the Supreme Court explained that a "gain 'constitutes taxable income when its recipient has such control over it that, as a practical matter, he

derives readily realizable economic value from it.'"  James v. United States, supra at 219 (quoting Rutkin v. United States, 343 U.S. 130, 137 (1952)).

A taxpayer has dominion and control over cash when he or she has the freedom to use it at will, even though that freedom may be assailable by persons with better title.  See Rutkin v. United States, supra.  This requires a court to look at all relevant facts and circumstances. See Arcia v. Commissioner, supra; Liddy v. Commissioner, supra.  For instance, the use of money for personal purposes is an indication of dominion and control.  See Woods v. Commissioner, T.C. Memo. 1989-611, affd. per curiam without published opinion 929 F.2d 702 (6th Cir. 1991).  However, holding money in a fiduciary capacity, such as an agent, generally will not require inclusion of such cash in a taxpayer's gross income.  See Diamond v. Commissioner, 56 T.C. 530, 541 (1971), affd. 492 F.2d 286 (7th Cir. 1974); Arcia v. Commissioner, supra.

With respect to the $99,880 involved herein, petitioner has the burden of proving he did not have dominion and control over the money; i.e., he was holding the money as agent for another.  See Rule 142(a); Erickson v. Commissioner, 937 F.2d 1548, 1551-1552 (10th Cir. 1991), affg. T.C. Memo. 1989-552; Schad v. Commissioner, 87 T.C. 609, 618-619 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987).  Resolution of the inquiry before us depends upon our believing petitioner's explanation that he was

merely transporting Abel's money to Mercedes and that no portion thereof belonged to petitioner. Thus, our primary task herein is to distill truth from falsehood. See <u>Diaz v. Commissioner</u>, 58 T.C. 560, 564 (1972). In doing so, we are aware that we must be careful "to avoid making the courtroom a haven for the skillful liar". <u>Id.</u> Accordingly, we look for objective facts to corroborate petitioner's account.

There are no such facts in the record supporting petitioner's testimony. We do not find petitioner's story to be credible. We believe that petitioner's story is but an attempt by petitioner to disguise his duplicity in a questionable transaction from which he derived his ownership interest in the currency, and that he signed the waiver disclaiming such interest in order to avoid inquiry and possible prosecution by local authorities. Other than himself, petitioner failed to present any witness or other evidence corroborating his testimony. Suffice it to say, we are satisfied that the $99,880 was his; thus, he is required to include the $99,880 in his gross income. Accordingly, we sustain respondent's determination that petitioner received $99,880 in unreported income in 1993.

Issue 2:  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a penalty equal to 20 percent of the amount of the underpayment attributable to negligence or disregard of rules or regulations, or to a substantial understatement of

income tax.  Section 6662(d) defines a substantial understatement as an understatement of income tax for the taxable year that exceeds the greater of 10 percent of the tax required to be shown on the tax return or $5,000.  If, however, the taxpayer can show that either substantial authority exists for the treatment of the items at issue or the taxpayer has adequately disclosed such items, and that there is a reasonable basis for petitioner's tax treatment of the item, section 6662(a) will not apply.  See sec. 6662(d)(2)(B); Rule 142(a).

Petitioner argues that the substantial understatement penalty should not be imposed because (1) he believed in good faith that he owed no obligation to either report or pay taxes on the $99,880, and (2) substantial authority exists supporting the conclusion that mere couriers are not the owners of property.  We do not believe petitioner acted either reasonably or in good faith.  As stated supra, we believe petitioner was the owner of the money and did not act as a mere courier. Consequently, we sustain respondent's imposition of the accuracy-related penalty.

In reaching our conclusions herein, we have considered all arguments presented and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing and concessions by the parties,

<u>Decision will be</u>

<u>entered under Rule 155</u>.