T.C. Memo. 2000-87


UNITED STATES TAX COURT


WILLIAM D. ZACK, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7825-94.                        Filed March 14, 2000.


John S. Regan, for petitioner.

Catherine M. Thayer, Linda C. Grobe, and Claire McKenzie,

for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  William D. Zack petitioned the Court to

redetermine respondent's determination of deficiencies in his

1985 and 1986 Federal income tax and additions thereto.  Those

determinations are as follows:

| | | Additions to Tax[1] | | |
|---|---|---|---|---|
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b)(1) | 6653(b)(1)(A) | 6661 |
| 1985 | $45,079 | $22,540 | | $11,270 |
| 1986 | 62,984 | | $112,210 | 15,746 |

[1]Respondent also determined that the additions to tax under sec. 6653(b)(2) and (b)(1)(B) apply to the deficiencies.

Following petitioner's concession[1] and a June 7, 1999, Oral Opinion of this Court that petitioner is collaterally estopped from contesting the applicability of the section 6653(b) additions to tax on account of his conviction for income tax evasion for the subject years, see sec. 7201, we are left to decide:

1. Whether petitioner's income for the respective years in issue should be increased by unreported income of $217,162 and $94,439 from the false invoice scheme described below. We hold that his unreported income from that scheme was $172,019 and $49,296, respectively.[2]

---

[1] Petitioner has not directed our attention to any evidence (and did not make any arguments on brief) as to respondent's determination of the additions to tax under sec. 6661. We conclude that petitioner has conceded this issue, if, in fact, the Rule 155 computation shows that his income tax understatement is "substantial" within the meaning of sec. 6661(b)(1). See Rule 151(e)(4) and (5); see also Rule 142(a).

[2] Respondent also determined that petitioner's income should be adjusted to reflect adjustments made to his distributive share of income/loss from a partnership; the adjustment stemmed from a tax-evasion scheme other than the one discussed herein. Petitioner has not contested respondent's proposed findings of fact as to this determination, and the record clearly supports those proposed findings. We sustain respondent's determination as to this adjustment without further discussion.

2.  Whether petitioner may carry back to 1985 and 1986 a purported net operating loss (NOL) from 1988.  We hold he may not.

Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the relevant years, dollar amounts are rounded to the dollar, and Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts were stipulated, and the parties' stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.  When we filed petitioner's petition, he resided in Morgantown, West Virginia. He filed his 1985 and 1986 Federal income tax returns with the Commissioner on July 14, 1986, and November 13, 1987, respectively.  He filed his 1988 Federal income tax return with the Commissioner on November 13, 1989, and he filed a 1988 Form 1040X, Amended U.S. Individual Income Tax Return, with the Commissioner on October 24, 1996.

In 1976, petitioner and Lester J. Sova (Sova) formed a tool and die business named Zachova Tool & Die, Inc. (Tool & Die), and, 4 years later, they formed another tool and die business named Zachova Industries, Inc. (Industries).  They owned equally the stock of Tool & Die and Industries, and they served as the companies' president and vice president, respectively.

They formed four other entities in the mid-1980's named Colt Tool & Die, Inc. (Colt), Synchronized Design & Development, Inc. (Synchronized), Sovack Partnership (Sovack), and Jaclyn Leasing, Inc. (Jaclyn) (we sometimes use the term "Zachova entities" to refer to two or more of the six entities formed by petitioner and Sova). Colt is a tool and die business, and its stock is owned equally by petitioner, Sova, and Sova's brother. Synchronized designs the dies used by the Zachova entities, and its stock is owned equally by petitioner, Sova, and Mark Bartolomucci. Sovack owns the machinery and equipment used by Tool & Die and Industries and the building in which those two companies operate; Sovack is owned equally by petitioner and Sova. Jaclyn rents a building to the Zachova entities; Jaclyn is owned equally by petitioner and Sova.

Petitioner and Sova devised a scheme in or around 1983 to obtain cash surreptitiously from Industries and Tool & Die. Under this scheme (the false invoice scheme), third parties issued false invoices to Tool & Die and Industries for work not actually performed, Tool & Die and Industries paid the third parties the amounts shown on the invoices, the third parties returned the payments to petitioner and Sova net of a 25-percent "commission", and petitioner and Sova split the net payments equally. Petitioner and Sova each received $217,162 from the false invoice scheme in 1985, and they each received $94,439 from

the false invoice scheme in 1986. Petitioner did not report on his 1985 or 1986 Federal income tax return any of the amounts that he received from the false invoice scheme.

During 1984, the Zachova entities began looking into contracting with Ford Motor Co. (Ford) to do work for it. Petitioner and Sova met with a Ford employee named Ed Cooper (Cooper), and Cooper told petitioner and Sova that they would secretly have to pay him money (bribes) for Ford to award contracts to the Zachova entities. Petitioner and Sova discussed Cooper's demand, and petitioner and Sova decided to pay Cooper on behalf of the Zachova entities for an award of Ford contracts. Petitioner and Sova each paid Cooper a total of $90,286 during 1985 and 1986, and, in return, Ford awarded some of its contracts to the Zachova entities. Petitioner and Sova used some of the money that they received from the false invoice scheme to pay Cooper the bribes.

OPINION

Respondent determined and argues that petitioner failed to report for the respective years in issue income of $217,162 and $94,439 realized from the false invoice scheme. Respondent asserts that petitioner exerted dominion and control over all the funds he received from that scheme and that he was free to use those funds as he chose. Petitioner does not dispute the fact that he received the amounts determined by respondent to be

income, but, petitioner claims, those amounts are not includable in his income because he received the underlying funds as a "mere conduit" for the Zachova entities' payment of bribes to Cooper. Petitioner relies primarily on this Court's memorandum opinions in Estate of Kalichuk v. Commissioner, T.C. Memo. 1964-336, Smith v. Commissioner, T.C. Memo. 1964-274, and Pew v. Commissioner, T.C. Memo. 1961-264. In Kalichuk, we held that money received by a corporation's shareholders was not taxable to them as a dividend because the owners immediately paid that money to public officials to secure work contracts for the corporation. We concluded in Kalichuk that the owners received the money as "mere conduits" for payment to the public officials. In Smith, we held similarly as to money received by a corporation's shareholder which he distributed to third parties as gifts or gratuities on behalf of the corporation. We noted in Smith that the taxpayer kept none of the money for his personal benefit. In Pew, we held that a taxpayer's gross income did not include money paid to his client's agent as kickbacks. The money passed through the taxpayer's hands in that the taxpayer billed his client for (and received from him payment for) the value of his services, plus an additional amount which represented the kickback, and the taxpayer returned the kickbacks to the agent.

We agree with petitioner that this Court's jurisprudence excludes from his gross income the amount of the bribes which he

paid to Cooper in exchange for Ford's awarding contracts to the Zachova entities. See also <u>Diamond v. Commissioner</u>, 56 T.C. 530, 541 (1971), affd. 492 F.2d 286 (7th Cir. 1974); <u>Ball v. Commissioner</u>, T.C. Memo. 1984-218; <u>Shaara v. Commissioner</u>, T.C. Memo. 1980-247. Petitioner and Sova, on behalf of the Zachova entities, had agreed with Cooper to pay him bribes as a precondition to Ford's award of the contracts, and petitioner, pursuant to a concerted plan, used part of the money that he received from the false invoice scheme to satisfy that agreement. Although respondent observes correctly that petitioner actually possessed the bribe money, we disagree with respondent's conclusion drawn therefrom that this possession allowed petitioner to do whatever he wanted with that money. To be sure, the Zachova entities wanted the contracts, the Zachova entities had to bribe Cooper to get the contracts, the Zachova entities (through petitioner and Sova) agreed with Cooper to pay him his bribes in return for the contracts, and petitioner and Sova, as officers and agents of the Zachova entities, used the Zachova entities' money to pay Cooper the bribes which, in turn, allowed the Zachova entities to receive the Ford contracts. Because petitioner received the bribe money from the Zachova entities as a mere intermediary, or "conduit", between them and Cooper, petitioner is not taxed on his "receipt" of that money.

As to the amount of the bribes, petitioner testified at trial that he paid $312,572 to Cooper in bribes during the subject years. We do not find this testimony credible.[3] The credible evidence in this case persuades us, and we have found as a fact, that petitioner paid Cooper $90,286 in bribes during the subject years. On the basis of the record, we also are satisfied that 50 percent of this amount was attributable to 1985 and that the rest was attributable to 1986. We conclude and hold that petitioner's gross income, as adjusted by respondent in the notice of deficiency, should be decreased by $45,143 in both 1985 and 1986.

Petitioner argues that he had an NOL in 1988 that he may carry back to the years at bar. Petitioner asserts: (1) He reported on his 1988 Federal income tax return the income that he realized from the false invoice scheme, (2) he amended that return in 1996 to account for respondent's position that the income was actually taxable in 1985 and 1986, and (3) his removal of that income from 1988 generated an NOL for that year.

The record does not adequately support petitioner's assertion that he realized an NOL in 1988. Although section 172(a) allows taxpayers to deduct an NOL equal to the sum of NOL

---

[3] Nor do we find credible the vague, unsupported testimony of petitioner to the effect that he indirectly paid General Motors Co. a $15,000 bribe. In contrast with the bribes paid to Cooper, the record does not adequately support petitioner's bald assertion that he indirectly bribed General Motors Co.

carryovers plus NOL carrybacks, petitioner, as the claimant of an NOL, must prove his right thereto.  See <u>United States v. Olympic Radio & Television, Inc.</u>, 349 U.S. 232, 235 (1955).[4]

We have considered all the parties' arguments and, to the extent not discussed above, find those arguments to be without merit or irrelevant.  To reflect the foregoing,[5]

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[4] Nor has petitioner proven that he reported on his 1988 Federal income tax return the income that he realized from the false invoice scheme.  Accordingly, we reject without further comment petitioner's argument that the mitigation provisions of secs. 1311 through 1314 and the doctrine of equitable recoupment operate favorably to him in this case.

[5] The sec. 6653(b) additions to tax apply to the entire underpayment.  We are convinced clearly that the entire underpayment in this case, which stemmed from the false invoice scheme and the other scheme discussed <u>supra</u> in note 2, was attributable to fraud.