T.C. Memo. 2013-179

UNITED STATES TAX COURT

CHAD B. HESSING AND KELLI B. HESSING, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23949-10.                    Filed August 5, 2013.

<u>Jeremy D. Deus</u> and <u>Barbara Zanzig Lock</u>, for petitioners.

<u>Kelly Andrew Blaine</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent, in a notice of deficiency mailed July 28,
2010, determined a $35,223 deficiency in petitioners' 2003 income tax.  The
issues remaining for our consideration are:  (1) whether petitioners must recognize
$296,775 in income from the sale of three parcels of realty during 2003; (2)

**[\*2]** whether petitioners are entitled to business expense deductions in excess of those respondent allowed in the notice of deficiency; and (3) whether the period of assessment of tax for petitioners' 2003 tax year expired or remains open under section 6501(e).[1]

FINDINGS OF FACT

Petitioners resided in Boise, Idaho, at the time their petition was filed. Chad Hessing (petitioner) was 22 years old during 2003, and he intended to pursue a career in the construction business. Petitioner was generally familiar with his father's construction businesses. For two years before 2003 and after the completion of less than one year of college, petitioner went on a religious mission. He had agreed with his father that upon his return he would work for and learn about his father's construction businesses. Their understanding was that petitioner would learn about the construction business by working as an employee and would receive a monthly salary of $2,500.

Petitioner's father's businesses had fully extended credit, and petitioners had a good credit rating.[2] The father asked petitioners to use their good credit

---

[1]Section references are to the Internal Revenue Code in effect for the year in issue.

[2]Petitioners had few assets, but their credit card history was good.

[*3] rating and act as purchasers of three parcels of realty so that he could develop more properties in his construction businesses. At all times during 2003 petitioner's father ran the construction businesses and petitioner was an employee. Petitioner did not receive and/or retain any proceeds from the transactions related to his father's construction businesses. Any checks that were drawn to petitioner, as payee, in connection with the real property and the construction businesses were turned over to his father. Petitioners acted as a conduit for petitioner's father's businesses concerning the three 2003 real property transactions. During 2003 petitioner received the $2,500 per month salary as he and his father had agreed.

The first parcel (lot 55) was to be used to construct a home for Kip and Amy Fife. Lot 55 was purchased in petitioners' names on March 21, 2003, and the closing with the Fifes took place on November 21, 2003. The Fifes paid $176,194, and after the payoff of the mortgage loan on the property and expenses of sale, the net amount shown as due petitioners was $12,827.03. Petitioners did not receive any portion of the $12,827.03.

The second parcel (lot 60) was purchased in petitioners' names and then on the same day, May 7, 2003, sold or transferred to one of petitioner's father's

**[*4]** business entities. As part of the lot 60 transaction checks were drawn to petitioner in various amounts which petitioner, in turn, gave to his father.

The purchase and sale of lot 8, the third parcel, was similar to the lot 55 and 60 transactions, and the sale of lot 8 closed at the end of December 2003. Petitioners' names appear in the transaction documents, but petitioners did not retain any of the checks or funds that the documentation reflected as attributable to them.

Attached to petitioners' 2003 joint Federal income tax return was a Schedule C, Profit or Loss From Business, reflecting $104,300 in gross receipts and a net profit or taxable amount of $1,558. Petitioner's father prepared the 2003 return for petitioners to account for the Form 1098, Mortgage Interest Statement, and Form 1099-MISC, Miscellaneous Income, that were issued in petitioners' names in connection with the three real estate transactions for which petitioners acted as agents or conduits for petitioner's father. Petitioner had no background in business, accounting, or taxation and was unfamiliar with the source or financial consequences of the figures his father reported on the 2003 return. Petitioner trusted his father to present the circumstances properly to the Government.

[*5]                                OPINION

The seminal question in this case is whether petitioners underreported gross income, and if they did, whether the amount of underreported gross income was sufficient to meet the threshold requirement of section 6501(e), providing for a six-year period within which respondent may assess a tax deficiency for petitioners' 2003 tax year.  If we decide that petitioners were not required to report additional gross income, then the remaining questions become moot because of respondent's inability to assess additional tax for 2003.  If we decide that petitioners were required to report 25% or more of additional gross income, we must then decide whether they are entitled to deductions in excess of those respondent allowed in the notice of deficiency.

Burden of Proof

Petitioners raised the question of burden of proof for the first time in their opening brief.  They contend that under section 7491(a) respondent bears the burden of proof for going forward with the evidence.  Respondent argues that petitioners' attempt to raise the burden of proof is untimely.

At trial the Court asked the parties:  "Is there any question in this case about who has the burden of proof and who has the burden of proceeding with the evidence?"  Counsel for petitioners replied "No, your Honor", and he proceeded to

[*6] call his first witness. The entire trial was conducted under the premise that petitioners had the burden of proof. Under these circumstances, it would be prejudicial and unjust to allow petitioners to raise, in a posttrial brief, questions concerning the burden of proof. Accordingly, we hold petitioners to their trial admission that they had the burden of proof and deny their attempt to raise the question of burden on brief. See DiLeo v. Commissioner, 96 T.C. 858, 891-892 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

Whether Petitioners Underreported Gross Income for 2003

We consider this issue first because it may be determinative of the outcome of this case. Normally the Commissioner has three years within which to assess tax. Sec. 6501(a). Under section 6501(e), however, the Commissioner has six years within which to assess tax where a "taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return". See sec. 6501(e)(1)(A). But for section 6501(e), respondent would not be able to assess an income tax deficiency in this case because the normal three-year period had expired at the time that the notice of deficiency was mailed. Accordingly, we must decide whether petitioners had an omission of gross income and whether it was in excess of 25% of the amount reported.

**[*7]** Petitioners argue that they were acting as an agent or conduit for petitioner's father and that the assignment of income doctrine requires that the principal report the income, citing Brittingham v. Commissioner, 57 T.C. 91 (1971). Respondent does not question or disagree with the legal foundation for petitioners' argument. Instead, respondent argues that the record in this case does not support their argument that they were agents for petitioner's father. Respondent argues that petitioner was in the construction business and that his income was understated.

The deeds and conveyancing documents concerning the three real estate transactions bear petitioners' names, and various underlying documents, including checks, also bear petitioners' names. On the other hand petitioner's and his father's testimony contradict the form of these transactions. Taken at face, the testimony presents a young man who acceded to his father's request to lend his credit reputation to facilitate the acquisition of real estate to be used in his father's construction businesses.[3] Ultimately, we find petitioner's and his father's testimony to be credible and, on that basis, hold that petitioners did not have unreported gross income. See Diaz v. Commissioner, 58 T.C. 560, 564 (1972).

---

[3]There were multiple business entities, and we have not detailed their interrelationship because it is of no consequence to the basic question of whether petitioners acted as agents or conduits for petitioner's father.

**[*8]**   The primary case precedent petitioners rely upon is a 1971 case decided by this Court in similar circumstances.  See Brittingham v. Commissioner, 57 T.C. 91.  That case involved a husband and wife who excluded from their gross income a deposit into the husband's bank account.  The deposit represented the proceeds of the sale of Mexican bonds the husband's mother owned.  At the husband's instruction his bank purchased U.S. bonds with the funds, and his name was shown on the purchase order.  The husband immediately instructed the bank to change the name on the order to his mother's name.  The Commissioner determined a deficiency in the taxpayers' Federal income tax for the amount of the deposit.  This Court held that the deposit was made into the husband's account in his capacity as an agent for his mother and was not income to him.

Like the husband's name in Brittingham, petitioners' names appear on transactional documents, but they were in no other respect "owners" of the properties and/or entitled to the benefits or subject to the burdens of the properties.  See also Diamond v. Commissioner, 56 T.C. 530, 541 (1971), aff'd, 492 F.2d 286 (7th Cir. 1974).  We find it somewhat problematic that petitioners had a Schedule C reflecting income from a construction business.  Petitioners, however, do not ask the Court to ignore the Form 1098 and 1099-MISC income that petitioner's father caused them to report on their Schedule C.  Petitioners argue that the

**[*9]** income that was not reported in Form 1098 or 1099-MISC should not be attributed to them.[4] Respondent argues that petitioners were in the construction business and that all gross income connected with the three parcels of realty should be attributed to them.

Respondent is in the unique position of arguing that petitioner's father was not the true recipient, even though it appears that he was the operator of the businesses. Normally, in a situation like this where the individuals named in the documentation do not appear to be the true parties in interest, the Commissioner has contended that the assignment of income doctrine would apply to attribute the income to the party in interest. Respondent is not in a position in this case to do so, because the three-year period for assessment has expired. So it appears that respondent's only recourse here is to attempt to attribute the unaccounted-for income to petitioners.

Respondent asks the Court to apply special scrutiny to petitioner's and his father's testimony because of their familial relationship. We have carefully scrutinized the testimony and other evidence in the record in this case, and they do not support respondent's argument. Petitioner and his father credibly testified to

---

[4]We note that a taxpayer is not limited to arguing the position taken on his tax return, although it is a factor to be considered. Casey v. Commissioner, 38 T.C. 357, 384 (1962).

[*10] the contrary.  Although on its face petitioners' Schedule C supports respondent's position, the remainder of the record overwhelmingly does not. Petitioners are in no way principals or the operators of the various construction business entities.  Other than the Form 1098 and 1099-MISC income that was reported on petitioners' 2003 return, there is little or no nexus to petitioner's father's business entities that would provide this Court with a foundation to hold that petitioners had unreported income.

Wherefore, we hold that petitioners did not have unreported gross income and that the period for assessment of tax for petitioners' 2003 tax year has expired. It is accordingly unnecessary to consider other issues raised by the parties.

To reflect the foregoing,

Decision will be entered for petitioners.