In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1717

WILLIAM RABINAK,

*Plaintiff-Appellant*,

*v.*

UNITED BROTHERHOOD OF CARPENTERS
PENSION FUND,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 CV 1904 — **Manish S. Shah**, *Judge*.

ARGUED DECEMBER 8, 2015 — DECIDED AUGUST 10, 2016

Before WOOD, *Chief Judge*, and BAUER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. When William Rabinak retired and received the calculation of his pension benefit, he thought something was off. The annual salaries listed did not appear to take into account quarterly payments of $2,500 he received for serving on his organization's Executive Board, so he appealed and maintained those payments should have been

counted. The pension fund appeals committee denied his appeal. Controlled as we are by a standard of review that asks only whether the decision was arbitrary and capricious, we affirm the denial. The plan's definition of compensation includes only "salary," and the $2,500 quarterly payments for Board service were paid separately from Rabinak's weekly salary payments and coded differently as well. The conclusion that the payments at issue were not salary payments under this particular plan was not arbitrary and capricious.

## I. BACKGROUND

William Rabinak worked full-time as a business representative for the Chicago Regional Council of Carpenters. By virtue of his position, he also served on the Council's Executive Board. Rabinak received quarterly payments of $2,500 for his service on the Board. The Council made these quarterly payments in checks separate from those for Rabinak's weekly salary.

When he retired, Rabinak qualified for a pension from the United Brotherhood of Carpenters Pension Fund, an employee benefit plan governed by ERISA. After receiving a letter detailing his annual retirement benefit, Rabinak noticed that the compensation amount upon which the Fund calculated his annual retirement benefit did not include approximately $10,000 he had received each year from the Council, with the result that his retirement payments would be lower than he thought they should be. Rabinak surmised that the Fund had not counted the $10,000 per year he received by virtue of his service on the Executive Board.

Rabinak appealed the Fund's calculation of his annual benefit to the Fund's appeals committee, and he argued that

the Executive Board payments were "Compensation" under the plan because his service on the Board was required as part of his job duties. The Fund'd plan administrator responded in a memorandum to the appeals committee that the Council had informed her it does not make contributions to the Fund for "Executive Committee wages." The plan administrator also included a letter from the Council's legal counsel, who took the position that the payment for Executive Board service was a "stipend," not a wage payment, and was therefore properly not included in the plan's definition of "Compensation."

The fund appeals committee, made up of a subcommittee of the fund's Board of Trustees, denied Rabinak's appeal. It wrote to Rabinak that the specific reason for denial was:

> The stipends received from the Regional Council of Carpenters for being on the Executive Committee are not included as Compensation for purposes of calculating Final Compensation.

Rabinak filed suit under 29 U.S.C. § 1132(a)(1)(B) seeking to recover pension benefits he maintains are due to him. The district court granted the Fund's motion for summary judgment, and Rabinak appeals.

## II. ANALYSIS

We review de novo the district court's decision to grant summary judgment to the Fund, and as we do so we view all facts and draw all reasonable inferences in Rabinak's favor. *Cerentano v. UMWA Health and Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013). When, as here, an ERISA plan explicitly gives the plan administrator discretion to interpret the terms of the plan, our review of a denial of benefits asks only whether the

plan administrator's decision was arbitrary and capricious. *See id.*; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989) ("A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable.").

Under the terms of the plan at issue, a participant's monthly pension payment is based upon his "Final Compensation," which the plan defines by a calculation based on his "Compensation." In the definition critical for our case, the plan defines "Compensation" as "all salary" but does not include "overtime, or fees or expenses paid or reimbursed." The plan also provides that "Compensation" does not include "the value of employee benefits or other non-wage payments, even if such payments are considered income for tax purposes." Rabinak argues that the Plan's determination that the payments for his service on the Executive Board were not "Compensation" was arbitrary and capricious, and he emphasizes that his service on the Board was part of his job duties.

That our standard of review demands that we ask only whether the denial decision was arbitrary and capricious is critical here. Under this deferential standard of review, we must uphold the decision so "long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010).

By the terms of the plan, the Executive Board payments are only included in Compensation if they are "salary." But as the Fund emphasizes, the Council paid Rabinak his annual salary on a weekly basis. The Executive Board payments were not included in those checks. Rather, the Executive Board money was paid out quarterly, and in checks separate from the weekly payments. The Council also coded the two payments differently in its payroll system—"EBOAR" for the Executive Board payments, and "SALAR" for the others. The Fund submits that, in light of these facts, a conclusion that the Board payments were not salary payments was a reasonable one based on the evidence.

In addition to arguing that the quarterly payments were not salary, the Fund argues that the Trustees could also have excluded the Board payments from "Compensation" on the basis that they were reimbursements for fees and expenses incurred for service on the Executive Board. While the plan does explicitly exclude from the "Compensation" definition "fees or expenses paid or reimbursed," we have several concerns with this line of argument. Most importantly, there is no evidence at all in the administrative record that these payments represented reimbursements for expenses, nor is there any evidence about the board meetings or any associated expenses. Indeed, one wonders what expenses could be incurred that would rise to the level of $10,000 a year in personal expenses for meetings of the Chicago Regional Council of Carpenters Executive Board. The Fund also only raised this argument for the first time before the district court, leaving Rabinak without the opportunity to respond to it by introducing evidence into the administrative record refuting the contention that the payments represented reimbursement for expenses.

Here, though, our issues with the Fund's argument that the Board payments were reimbursements ultimately do not matter in light of our standard of review. It is "possible to offer a reasoned explanation," based on the evidence in the administrative record, that "Compensation" does not include the payments Rabinak received for serving on the Executive Board. *See Cerentano*, 735 F.3d at 981. Rabinak emphasizes that the $2,500 quarterly payments were included on Rabinak's W-2 forms as wages and not as expenses or other benefits, and also that the plan administrator described the payments as "Executive Committee wages" in a memorandum to the Fund's trustees. But the plan makes clear that not all wages are "Compensation" under the plan's definition. For one, the plan specifically excludes overtime from "Compensation." The plan also explicitly states that excluded from "Compensation" are "other non-wage payments, even if such payments are considered income for tax purposes." While overtime payments would be considered wages for tax purposes, and overtime payments are generally thought of as compensation in common parlance, it is the plan's definition that matters. Not all "compensation" is "Compensation" under the plan.

Rabinak's arguments have some appeal, and it is uncontested that he had to serve on the Board by virtue of his position. But "[w]hen a plan is open to more than one interpretation, we will not find the administrator's decision arbitrary and capricious just because we would have reached a different conclusion or relied upon different authority had we been in the administrator's shoes." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999). That is, it is not enough that Rabinak's interpretation may be a reasonable one when our review is only for whether the trustees' decision is arbitrary

and capricious. *See Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 893 (7th Cir. 2012). Whether payments are "salary" is what matters under this particular plan. It is not unreasonable to conclude that if the Council truly was increasing Rabinak's salary by $10,000 a year for his Board service, it would have done so by increasing the amount paid in his separately issued weekly salary checks. In light of our standard of review, we cannot say that the plan's interpretation was unreasonable.

Rabinak raised several other issues for our consideration. He reminds us that even in a deferential review like this one, "courts should be aware of structural conflicts of interest in reviewing plan decisions for abuse of discretion." *Raybourne v. Cigna Life Ins. Co. of New York*, 576 F.3d 444, 449 (7th Cir. 2009) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008)). One such conflict of interest can occur when a plan which pays out the benefits is given discretion to make decisions regarding the denial of benefits. *See Glenn*, 554 U.S. at 112. Unlike the employer in *Glenn* who both solely funded the benefits and determined eligibility, the plan here is a multi-employer nonprofit welfare plan. *Cf. Manny v. Cent. States, Se. and Sw. Areas Pension and Health and Welfare Funds*, 388 F.3d 241 (7th Cir. 2004) (no conflict of interest where multi-employer plan with equal number of employer and union representatives on appeals committee ruled unanimously and lacked incentive to rule against applicant). Rabinak points out that Frank Libby, the president of his former employer, the Council, is on the plan's Board of Trustees. But the fund's benefit appeals are decided by a subcommittee of the Board of Trustees of which Libby was not a member, so he was not involved in the decision to deny Rabinak's appeal. There is also no suggestion he influenced the decision here. In any event,

the Supreme Court tells us that the presence of a conflict will "act as a tiebreaker when the other factors are closely balanced." *Glenn*, 554 U.S. at 117. "When the case is borderline, in other words, the inherent conflict of interest that exists in so many of these situations can push it over the edge—towards a finding of capriciousness." *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009). This, however, is not a borderline case; the denial decision has "rational support in the record." *See id.* at 861.

Rabinak also argues that the determination was arbitrary and capricious for failure to provide specific reasons for its exclusion of the quarterly payments. A decision must give "specific reasons" for the denial. 29 U.S.C. § 1133(1). But "that is not the same thing as the reasoning behind the reasons" or "the interpretive process that generated the reason for the denial." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996); *see also Militello v. Cent. States, Se. and Sw. Areas Pension Fund*, 360 F.3d 681, 689 (7th Cir. 2004). The important point is that the reason given is a sufficient explanation to allow the recipient to "formulate his further challenge to the denial." *Id.* The plan's denial did so here, and Rabinak has formulated and made well-developed arguments from the beginning that the Board payments should be included in "Compensation."

Finally, Rabinak argues that the district court improperly relied on evidence outside the administrative record. We disagree. The court's order cites the fund's motion for summary judgment and exhibits that were not part of the administrative record, but it does so only to compare the parties' framings of the issue and to explain the fund's position. Doing so does not equate to improper reliance on documents outside

the administrative record to make a substantive determination. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1169 n.8 (7th Cir. 1997).

## III. CONCLUSION

The judgment of the district court is AFFIRMED.