119 T.C. No. 6


UNITED STATES TAX COURT


ROBERT ANCIRA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 425-01.                    Filed September 24, 2002.


        P had a self-directed IRA account of which C was the
custodian.  P requested that C purchase common stock in X
for the IRA.  Although the investment in X stock was not
prohibited, C, as a matter of policy, refused to purchase
the stock because X was not publicly traded.  P arranged for
C to issue a check drawn on the IRA account made payable to
X.  C sent the check to P, who forwarded it to X.  X issued
the stock in the name of P's IRA.  P received X's stock and
delivered the stock to C.  R determined that there was a
distribution from the IRA to P.
        <u>Held</u>:  P was a conduit for C, and there was no
distribution from the IRA to P.  <u>Lemishow v. Commissioner</u>,
110 T.C. 110 (1998), distinguished.


<u>David Bruce Spizer</u>, for petitioner.

<u>Emile L. Hebert III</u> and <u>Louis John Zeller, Jr.</u>, for

respondent.

OPINION

DAWSON, Judge: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge: Respondent determined a deficiency of $17,393 and a section 6662 accuracy-related penalty of $3,479 in petitioner's 1998 Federal income tax. After concessions,[2] the issue is whether a transaction involving the purchase of stock in S.K./R.M.A., Inc. (S.K.),[3] constituted a distribution to petitioner from his individual retirement account (IRA). At the time the petition was filed, petitioner resided in New Orleans, Louisiana.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner concedes that he failed to report $87 of interest income. Respondent concedes that petitioner is not liable for the sec. 6662 penalty.

[3] S.K. apparently stands for Smoothie King, which we gather was the trade name of a product.

## Background

This case was submitted fully stipulated under Rule 122, and the applicable facts may be summarized as follows.[4]  During 1998 petitioner maintained a self-directed IRA.  Pershing, a division of Donaldson, Lufkin & Jenrette Securities Corp., was the custodian of the IRA, and Hibernia Investments, L.L.C. (Hibernia), was the investment adviser.

Petitioner could request that the funds of the IRA be invested in specific assets (specific mutual funds, stocks, etc.).  These requests were typically made by telephone to Hibernia, and Pershing, as custodian, would then execute the requests.  In September 1998, petitioner requested that his IRA invest $40,000 in the stock of S.K.  An employee of Hibernia informed petitioner that although S.K. stock could be held as an asset of the IRA, Pershing would not purchase the stock on behalf of the IRA because the stock was not publicly traded.  Subsequently, petitioner contacted S.K. directly and was informed that its stock was available for purchase directly from S.K.  Petitioner and Hibernia determined that the IRA could invest in S.K. if Pershing issued a check payable directly to S.K.  Hibernia furnished petitioner with a "Distribution Request Form" from Pershing to facilitate the issuance of the check.  The form

---

[4]  The facts are not in dispute and the issue is primarily one of law.  Sec. 7491, concerning burden of proof, has no bearing on this case.

stated that "(Use of this form will result in a distribution reportable to the IRS [Internal Revenue Service] on Form 1099-R [Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.])."

On September 14, 1998, petitioner executed the form requesting Pershing to issue a $40,000 check made payable to S.K. and instructed that the check constituted an investment of his IRA assets. Pershing sent petitioner a confirmation letter indicating that a distribution of $40,000 had occurred on September 15, 1998, and instructed petitioner to contact Pershing if he had any questions. On the same day, Pershing issued the $40,000 check payable to S.K. drawn on petitioner's IRA account. Pershing sent the check to petitioner. Petitioner did not negotiate the check. Instead, petitioner forwarded the check directly to S.K.

A "Memorandum of Corporate Stock Purchase" maintained by S.K. reflected that, on October 29, 1998, petitioner's IRA purchased 714.28 shares of stock for $40,000. On December 1, 1998, S.K. issued stock certificate No. 3. The certificate stated that "IRA fbo ROBERT ANCIRA, M.D. DLJSC. is the owner" of 714.28 shares. For reasons that are not clear, the stock was not immediately transferred to Pershing or to petitioner. Petitioner was unaware that Pershing did not have the stock until much later. When petitioner learned that the stock had not been

transferred to Pershing, which was after the notice of deficiency was issued, he contacted S.K. and had the certificate sent to him.  Petitioner then delivered the stock to Pershing, and the stock was accepted by Pershing and placed in petitioner's IRA account.

For petitioner's 1998 Federal income tax year, Pershing issued petitioner a Form 1099-R, indicating that a $40,000 distribution had been made to petitioner.  Petitioner did not report this $40,000 transaction on his 1998 Federal income tax return.

Respondent determined that the check issued by Pershing on September 14, 1998, constituted a distribution from the IRA to petitioner and was includable in income under sections 408(d) and 72.  Respondent also imposed the section 72(t) 10-percent additional tax.

### Discussion

Section 408(d)(1) provides that "any amount paid or distributed out of an individual retirement plan shall be included in gross income by the * * * distributee * * * in the manner provided under section 72."  Respondent argues that petitioner's completion of the distribution request form and the resulting issuance of the $40,000 check constituted a distribution to petitioner under section 408(d)(1).

Neither the Internal Revenue Code nor the applicable regulations provide specific guidance on whether an amount is considered to have been "paid or distributed out of an individual retirement plan" in the circumstances here. If, on petitioner's instructions, Pershing had paid the $40,000 to S.K. for its stock, there simply would have been an investment in an asset of the IRA, and there would have been no question whether there had been a distribution to petitioner. Similarly, if Pershing had delivered the check to a broker who had purchased the shares for petitioner's IRA account, there would have been no distribution. The broker would have been Pershing's agent. The question then is whether, when Pershing delivered the check made out to S.K. to petitioner, who in turn delivered it to S.K. to purchase the stock for the IRA account, there was a distribution to petitioner. We point out that the question does not involve whether there was a nontaxable rollover of the IRA assets within the period specified by section 408(d)(3).

In Diamond v. Commissioner, 56 T.C. 530, 541 (1971), affd. 492 F.2d 286 (7th Cir. 1974), we noted: "We accept as sound law the rule that a taxpayer need not treat as income moneys which he did not receive under a claim of right, which were not his to keep, and which he was required to transmit to someone else as a mere conduit."

While the considerations in <u>Diamond</u> may have been different, we believe that our observation is applicable here. From our perspective, the soundest view of this case is that petitioner acted as a conduit for Pershing by both arranging the stock purchase and ensuring that the check was delivered to S.K. The IRA was a custodial account, and Pershing was the trustee thereof, as well as the holder of the assets in the account. Sec. 408(h); sec. 1.408-2(d), Income Tax Regs. Petitioner exercised his right, under the IRA agreement, to direct investments of the IRA assets by requesting that Pershing invest a portion of his IRA assets in S.K. stock. Because of Pershing's policy not to purchase securities that are not publicly traded, petitioner acted as a conduit for Pershing in arranging the investment. The check was payable to and negotiated by S.K. The stock was issued to the IRA account.

Petitioner's actions as the IRA trustee's agent consisted of insuring that the check was delivered to S.K. We are not aware of any provisions of the Internal Revenue Code, applicable regulations, or case law that prohibit a taxpayer from acting as a conduit for an IRA trustee under the circumstances presented here. We further note that it cannot be argued cogently that petitioner was in constructive receipt of the assets represented by the transaction. See <u>Estate of Brooks v. Commissioner</u>, 50 T.C. 585 (1968). "Its essence [of constructive receipt] is that

funds which are subject to a taxpayer's unfettered command and which he is free to enjoy at his option are constructively received by him whether he sees fit to enjoy them or not." Id. at 592. Specifically, under Louisiana law, petitioner was not a holder of and could not negotiate the check. La. Rev. Stat. Ann. secs. 10:1-201 (defining a holder); 10:3-201 (defining negotiation); 10:3-301 (defining an individual entitled to enforce an instrument) (West 1993). Petitioner's actions as a conduit for the IRA trustee in these limited circumstances violated no prohibition regarding a taxpayer's relationship to his IRA and, therefore, did not result in a distribution.

Respondent argues that this transaction is controlled by Lemishow v. Commissioner, 110 T.C. 110 (1998). In Lemishow the taxpayer made withdrawals from retirement accounts, invested the distributions in stock, and contributed the stock to a new IRA. We held that this transaction could not qualify as a tax-free rollover of qualified plan assets because the character of the property transferred to the new IRA was different from the character of the property distributed to the taxpayer, and, therefore, under section 402(c)(1) the transaction did not qualify as a rollover. Id. at 113. But, in this case,

petitioner received no cash.  <u>Lemishow</u>, therefore, is not on point.[5]

Nor do we find any significance in the fact that S.K. did not immediately deliver the shares to Pershing.  In this regard, we point out again that we are not dealing directly with the 60-day limitation on a rollover of a distribution under section 408(d)(3).  Rather, we are concerned with whether the delayed transfer of the stock certificate alters our conclusion that there was no distribution from the IRA to petitioner.  At all times, the IRA, not the petitioner, was the owner of the shares even though it may not have been in physical possession of the stock certificate.

Furthermore, to the extent that this fact is relevant, the failure of S.K. to deliver the stock certificate would not invalidate the transaction.  In <u>Wood v. Commissioner</u>, 93 T.C. 114 (1989), we held that a bookkeeping error by the trustee of an IRA, which resulted in a portion of a rollover distribution from another qualified plan not being credited to the IRA account within the applicable period, did not preclude the rollover.  We noted that "a bookkeeping error does not alter the rights and responsibilities between parties to a transaction."  <u>Id.</u> at 121. While the question here is somewhat different, we believe that

---

[5] Similarly, respondent's reliance on <u>Bunney v. Commissioner</u>, 114 T.C. 259 (2000), and <u>Darby v. Commissioner</u>, 97 T.C. 51 (1991), is misplaced.

the rationale is similar.  The failure here did not alter the ownership of the stock by the IRA and certainly did not transfer the ownership to petitioner.  The worst that could be said is that there was an oversight from which we draw no adverse inference.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.