T.C. Memo. 2005-213

UNITED STATES TAX COURT

RAMIRO AND MARIA MARTINEZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5130-04.                    Filed September 12, 2005.

Ramiro and Maria Martinez, pro sese.

<u>Irene Carroll</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined a deficiency of $2,305
in petitioners' Federal income tax for 2001.[1]  The issue for

<hr>

[1]All section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

decision is whether petitioners received unreported income for 2001.[2]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. Petitioners resided in Los Angeles, California, when their petition in this case was filed. Petitioners have limited facility in English, and their testimony was given through an interpreter.

A.   Petitioners' 2001 Tax Return

Petitioners timely filed a joint Federal income tax return for 2001. Petitioners reported $14,840 of business income on the return and listed their respective occupations as self-employed. Each petitioner also filed a separate Schedule C-EZ, Net Profit From Business (Sole Proprietorship), with the return. Petitioner Ramiro Martinez (Mr. Martinez) reported on his Schedule C-EZ that his principal business or profession was construction and that he received gross receipts and a net profit of $11,050. Petitioner Maria Martinez (Mrs. Martinez) reported on her Schedule C-EZ that

_____

[2]Respondent increased petitioners' income by the amount of unreported income he alleges they received, and as a result he also adjusted petitioners' self-employment tax, self-employment tax deduction, and earned income credit. The parties agree that the resulting adjustments are computational, and they do not dispute that the adjustments turn on our resolution of the unreported income issue.

her principal business or profession was housekeeping and that she received gross receipts and a net profit of $3,790.

B.   The Notice of Deficiency

On January 26, 2004, respondent issued a Notice of Deficiency in which he adjusted petitioners' business income from $14,840 to $20,710.  Respondent adjusted petitioners' business income based on Forms 1099 submitted to the Internal Revenue Service by third-party payers.  The Forms 1099 provided as follows:

| Payer of income | Payee of income | Amount paid |
|---|---|---|
| Life Bank | Ramiro Martinez | $2,000 |
| Dr. Yury Geylikman | Ramiro Martinez | 3,000 |
| Alpa Construction, Inc. | Ramiro Martinez | 5,020 |
| Svetella Design, Inc. | Ramiro Martinez | 3,750 |
| Fresh Paint Art Advisor, Inc. | Maria Martinez | 3,790 |
| County of Los Angeles Auditor Controller | Maria Martinez | 3,150 |
| Total Amount Reported | | 20,710 |

As a result of his adjustment to petitioners' business income, respondent also adjusted petitioners' self-employment tax, self-employment tax deduction, and earned income credit.  Petitioners acknowledge that they received the amounts reported on the Forms 1099.

C.   Mr. Martinez's Self-Employment Income

Mr. Martinez was paid for his construction work in installments by check.  Mr. Martinez testified that he would cash the checks he received and divide the proceeds with other workers

who were unable to cash checks.[3]  Mr. Martinez testified that his payment to each person depended on the type of work the individual did and the length of time that the individual worked. Mr. Martinez kept no records, however, of how much time the other workers worked or of his transferring income to any third parties.  Mr. Martinez also kept no records of how much income he earned or retained for himself.

1.   Life Bank

Mr. Martinez testified he split the $2,000 he received from Life Bank with two other workers, Gustav Ortiz (Mr. Ortiz) and a man Mr. Martinez could only identify as "another guy who is not here.  He went to Mexico."  Mr. Martinez did not know how much of the $2,000 was for his own work or how much he kept.  Mr. Ortiz, who has a Social Security number, testified that he worked only for Mr. Martinez and that Mr. Martinez gave him approximately $1,000 cash for the job, but Mr. Ortiz did not report the money on a tax return or deposit the money in a bank.

2.   Dr. Yury Geylikman

Mr. Martinez testified he split the $3,000 he received from Dr. Yury Geylikman (Geylikman) with at least two or three other

---

[3]The record does not make clear the relationship between Mr. Martinez and the other workers.  Mr. Martinez gave conflicting testimony as to whether the other workers worked for him or merely with him.

workers, but he could identify only one worker, Mr. Luis Garcia. Mr. Martinez estimated that he kept $1,400 of the $3,000.

### 3. Alpa Construction and Svetella Design, Inc.

Mr. Martinez testified he split both the $5,020 he received from Alpa Construction (Alpa) and the $3,750 he received from Svetella Design, Inc. (Svetella), with three or four workers whom he could not identify. Petitioner did not know how much of the Alpa income he kept, but he estimated that he kept $1,600 of the Svetella income.

### 4. Tax Return Preparation

Petitioners' 2001 joint return was prepared by Gonzales Services. Mr. Martinez informed Gonzales Services that he divided the income he received with other workers. The amount of income Mr. Martinez reported on his Schedule C-EZ was based on his own estimates of how much he had earned from his business and how much he had paid to others. Mr. Martinez's estimates were not based on any records.

### D. Mrs. Martinez's Self-Employment Income

In 2001, Fresh Paint Art Advisor, Inc., paid Mrs. Martinez $3,790, and that was the only income reported on her Schedule C-EZ. Also during 2001, Los Angeles County (County) paid Mrs. Martinez $3,150 for providing care to her grandchildren. Mrs. Martinez used the money from the County for her grandchildren, but she kept no records of her expenditures.

E.    The Present Litigation

On March 22, 2004, petitioners timely filed a petition with this Court seeking review of the notice of deficiency and alleging that they had expense documentation that would reduce the amount of the deficiency.  On April 27, 2004, respondent's answer was filed.  The trial in this case was set for the Court's January 24, 2005, Los Angeles, California, trial session, and both parties appeared and were heard.

OPINION

Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived".  Respondent has determined that petitioners received unreported income from Life Bank, Alpa, Geylikman, Svetella, and the Los Angeles County Auditor Controller.

The Commissioner's deficiency determination is normally entitled to a presumption of correctness, Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985), and the burden of proving the determination incorrect generally rests with the taxpayer, Rule 142(a).  However, when a case involves unreported income and that case is appealable to the Court of Appeals for the Ninth Circuit, barring a stipulation to the contrary, the Commissioner's determination of unreported income is entitled to the presumption of correctness only if the determination is supported by some evidence linking the taxpayer to an income-producing activity.

Palmer v. United States, 116 F.3d 1309, 1313 (9th Cir. 1997). Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the burden shifts to the taxpayer to rebut the presumption by establishing that the Commissioner's determination is arbitrary or erroneous. Rapp v. Commissioner, supra at 935; Adamson v. Commissioner, 745 F.2d 541, 547 (9th Cir. 1984), affg. T.C. Memo. 1982-371; see also United States v. Janis, 428 U.S. 433, 441-442 (1976).

This case is appealable, barring a stipulation to the contrary, to the Court of Appeals for the Ninth Circuit. Consequently, we are bound to apply the law of the circuit as summarized above. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

The evidence on which respondent relies to satisfy his initial burden of production regarding his determination that petitioners received unreported income is drawn from Forms 1099 that respondent received from third-party payers. Because petitioners have stipulated that they received the income reported on the Forms 1099, respondent has met his burden of production. See Parker v. Commissioner, 117 F.3d 785, 787 (5th Cir. 1997) (when the taxpayer does not dispute the receipt of unreported income, the Commissioner "has no duty to investigate a

third-party payment report"). Petitioners, therefore, have the burden of showing that respondent's determination is erroneous.[4]

Petitioners contend that although they received the funds reported on the Forms 1099, "some or all of these funds were given to them to pay to third parties and * * * therefore * * * [they do] not believe the amounts * * * [are] their income." We reject petitioners' contention.

It is well established that a taxpayer need not treat as income payments that he did not receive under a claim of right, that were not his to keep, and that he was required to transmit to someone else as a mere conduit. Diamond v. Commissioner, 56 T.C. 530, 541 (1971), affd. 492 F.2d 286 (7th Cir. 1974); see also Ancira v. Commissioner, 119 T.C. 135, 138 (2002); Vetrano v. Commissioner, T.C. Memo. 2000-128. However, if a taxpayer does receive a payment under a claim of right and without restriction or limitation as to the disposition of the payment, then the taxpayer has received taxable income even if it still may be claimed that he is not entitled to retain the payment and even though he may be liable to restore its equivalent. See N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932); Vetrano v. Commissioner, supra. The record does not reflect that

[4]In this case, petitioners do not contend that sec. 7491(a), which shifts the burden of proof to the Commissioner if its requirements are met, applies, and petitioners have not produced evidence to show they meet the requirements of sec. 7491(a). The burden of proof, therefore, remains on petitioners.

petitioners received the unreported income as mere conduits without a claim of right.

A.  Mr. Martinez

Mr. Martinez testified that he split the money he received from the third-party payers with other workers because the workers "had no formal ID or any papers to cash their money, and so * * * [I] took the check * * * [myself] and * * * [I] cashed it for them."  Mr. Martinez provided inconsistent testimony, however, as to whether the workers worked for him or with him, the number of workers he paid and the amounts he paid them, and the amounts he kept for himself.  Mr. Martinez also presented no documentation supporting his alleged division of the money he received or the amount he reported on his Schedule C-EZ, and he provided no documentary evidence that he was obligated to divide the money with other workers.

One of the men who worked with Mr. Martinez during 2001, Gustav Ortiz (Mr. Ortiz), testified that Mr. Martinez gave him "about a thousand for the Life job".  Although Mr. Ortiz did not report the income on a Federal income tax return and did not have any documentation to support his testimony, we shall accept his testimony made under oath, and we shall allow Mr. Martinez a deduction of $1,000 for wages paid to Mr. Ortiz.

Because of Mr. Martinez's vague and inconsistent testimony and the lack of credible evidence in the record, we conclude that

petitioners failed to carry their burden of proof, that Mr. Martinez received the amounts reported on the Forms 1099 by Life Bank, Geylikman, Alpa, and Svetella under a claim of right, and that Mr. Martinez must include those amounts in his income.  See Liddy v. Commissioner, T.C. Memo. 1985-107 (taxpayer did not meet his burden of proof where he inadequately explained what he did with the funds he received), affd. 808 F.2d 312 (4th Cir. 1986). However, we shall allow Mr. Martinez a deduction of $1,000 for the amount that Mr. Ortiz testified under oath he received from Mr. Martinez.

B.  Mrs. Martinez

Mrs. Martinez testified that she spent the $3,150 she received from the County on her grandchildren because she believed the money belonged to them and that the County only paid it to her "because she was taking care of the kids."  Mrs. Martinez failed to provide any credible evidence, however, to support her claim that the money belonged to her grandchildren. For example, Mrs. Martinez presented no evidence that her use of the County funds was restricted, that she spent the money on her grandchildren other than by choice, or that the funds were excludable from her income by operation of law.[5]  Consequently,

_____

[5]For example, sec. 131(a) provides that gross income shall not include amounts received by a foster care provider as qualified foster care payments.  See Cato v. Commissioner, 99 T.C. 633 (1992).  Petitioners do not contend that Mrs. Martinez
(continued...)

we conclude that petitioners have failed to carry their burden of proving that the County payments of $3,150 were not income to Mrs. Martinez.

C.   Conclusion

We have carefully considered all remaining arguments made by the parties for results contrary to those expressed herein and, to the extent not discussed above, conclude that those arguments are without merit.

To reflect the foregoing,

Decision will be entered
under Rule 155.

---

[5](...continued)
was a foster care provider or that the payments in question were qualified foster care payments.  The record establishes only that Mrs. Martinez received the payments for taking care of her grandchildren.