In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-2987

RAYMOND S. MCGAUGH,

*Petitioner-Appellee*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellant*.

Appeal from the United States Tax Court.
No. 13665-14 — **David Gustafson**, *Judge*.

ARGUED FEBRUARY 22, 2017 — DECIDED JUNE 26, 2017

Before BAUER and WILLIAMS, *Circuit Judges*, and DEGUILIO, *District Judge*.[*]

DEGUILIO, *District Judge*. This appeal from the Tax Court addresses whether a taxable distribution occurs where an individual directs his IRA custodian to wire funds directly from his IRA to purchase securities, but his custodian does not accept the resulting share certificate. For the reasons that

_____

[*] Of the Northern District of Indiana, sitting by designation.

follow, we conclude that the petitioner was never in actual or constructive receipt of funds from his IRA. Accordingly, we affirm the judgment of the Tax Court.

## I.

Petitioner Raymond McGaugh has had an Individual Retirement Account (IRA) with Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) since 2002. In summer 2011, he requested that Merrill Lynch use money from that IRA to purchase 7,500 shares of stock issued by First Personal Financial Corporation (FPFC), a privately held company. For reasons that are not clear from the record, Merrill Lynch would not purchase those shares on McGaugh's behalf. So, McGaugh called Merrill Lynch and initiated a wire transfer of $50,000 from his IRA directly to FPFC, which occurred on October 7, 2011.

On November 28, 2011, FPFC issued a stock certificate titled "Raymond McGaugh IRA FBO Raymond McGaugh", which it mailed to Merrill Lynch.[1] Merrill Lynch says it then received this certificate in early 2012 (though FPFC claims to have sent it earlier). After receiving the certificate, Merrill Lynch did not retain it, believing McGaugh's transaction to have impermissibly exceeded the 60-day window applicable to rollovers of IRA assets under 26 U.S.C. § 408(d)(3). Rather, Merrill Lynch attempted to send the certificate to McGaugh twice in February 2012, but the United States Postal Service returned it both times (McGaugh says this is because the

---

[1] While the IRS argued in briefing that the certificate was incorrectly titled, since McGaugh's IRA is actually named "MLPF&S Cust FPO Raymond McGaugh IRA FBO Raymond McGaugh", it conceded at oral argument that this is irrelevant.

certificate was mailed to an incorrect address). On the second occasion, it was marked as "refused." Merrill Lynch then sent the certificate to McGaugh a third time via FedEx and it was not returned. The shares were never deposited into McGaugh's IRA. The location of the share certificate is currently unknown. The IRS contends that McGaugh possesses it, though McGaugh denies that allegation.

Following these events, Merrill Lynch characterized the wire transfer as a taxable distribution and issued a Form 1099-R. McGaugh claims he never received that form. On March 17, 2014 the IRS issued a notice of deficiency, which indicated that McGaugh had failed to report a $50,000 distribution for the tax year 2011. It accordingly assessed McGaugh tax due in the amount of $13,538 and a substantial-tax-understatement penalty of $2,708.

McGaugh then filed suit, contending that this was an error. The Tax Court agreed, holding on summary judgment that McGaugh did not take a taxable distribution from his IRA in 2011. The IRS now appeals that decision.

## II.

The Court of Appeals reviews decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Accordingly, we review the Tax Court's grant of summary judgment *de novo*. *Musa v. Commissioner*, 854 F.3d 934, 938 (7th Cir. 2017). As the nonmoving party, we take the facts in the light most favorable to the IRS. *See Rabinak*

*v. United Bhd. of Carpenters Pension Fund*, 832 F.3d 750, 753 (7th Cir. 2016).

The core issue in this case is whether McGaugh made a taxable withdrawal from his retirement account. *See* 26 U.S.C. § 408(d)(1) (providing that IRA distributions are generally subject to income tax). Though McGaugh never physically received any cash or other assets from his IRA during the 2011 tax year, the IRS nevertheless asserts that McGaugh took such a distribution because he constructively received IRA proceeds.

Under the doctrine of constructive receipt, a person receives income "not only when paid in hand but also when the economic value is within the taxpayer's control." *United States v. Fletcher*, 562 F.3d 839, 843 (7th Cir. 2009). Constructive receipt thus occurs where income "is credited to [an individual's] account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." 26 C.F.R. § 1.451-2(a).

A review of the record reveals no evidence that McGaugh was in constructive receipt of assets from his IRA. First, as the IRS essentially conceded at oral argument, it is clear McGaugh did not constructively receive stock. The FPFC share certificate was never in his physical possession during the 2011 tax year. There is also no evidence that he had any control over those shares or the rights associated with them that could give rise to a finding of constructive receipt. *See Ancira v. Commissioner*, 119 T.C. 135, 138–39 (2002); *United*

*States v. Fort*, 638 F.3d 1334, 1340–41 (11th Cir. 2011). Indeed, the share certificate was issued in the name of "Raymond McGaugh IRA FBO Raymond McGaugh" rather than McGaugh's own name. And when McGaugh requested a replacement share certificate, FPFC refused to issue one without first receiving indemnification from Merrill Lynch. Thus, this case is similar to *Ancira*, in which the Tax Court found no constructive receipt where the petitioner was not a holder of, and accordingly could not negotiate the check at issue.[2]

The IRS' primary argument is that McGaugh constructively received funds from his IRA when he directed Merrill Lynch to wire them at his discretion to FPFC. It notes that a party cannot circumvent the rules on taxable income simply by directing a distribution to a third party. We have recognized this commonsense proposition before. *Fletcher*, 562 F.3d at 843 ("a person who earns income can't avoid tax by telling his employer to send a paycheck to his college, or his son, rather than to his bank"); *see also Old Colony Trust Co.*

---

[2] Relatedly, we reject the IRS' reliance on *Estate of Brooks v. Commissioner*, 50 T.C. 585 (1968). That case found that an individual did not constructively receive retirement funds where the distribution of those funds was subject to restrictions imposed by retirement plan trustees. In contrast, the IRS contends that McGaugh's decision to title the stock certificate in the name of his IRA amounts to a self-imposed restriction insufficient to avoid constructive receipt. But we do not believe holding securities in a tax shelter is the sort of end-run around possession the constructive receipt doctrine is intended to address. Moreover, we note that even though McGaugh may have made the initial decision to purchase FPFC stock, once he did so he had no control over that stock, as evidenced by FPFC's refusal to issue a replacement share certificate without first receiving indemnification from Merrill Lynch.

*v. Commissioner*, 279 U.S. 716, 729 (1929) (finding that an employee received taxable income where his employer paid tax liability on his behalf).

It is not, however, implicated in this case. McGaugh didn't direct a distribution to a third party; he bought stock. That is a prototypical, permissible IRA transaction. *See Ancira*, 119 T.C. at 137 (noting that there is unquestionably no distribution where a beneficiary merely directs his IRA custodian to purchase stock); *Hampshire Grp., Ltd. v. Kuttner*, No. 3607, 2010 WL 2739995, at *27 (Del. Ch. July 12, 2010) (noting that constructive receipt concerns not whether a deferred compensation plan participant "can participate in the plan's choice of investments" but whether "the funds were made currently available to the plan participant to meet immediate financial needs."). Further, there is no indication that McGaugh orchestrated this purchase for the benefit of FPFC or for any reason other than because he wished to obtain stock to be held in his IRA. Thus, there is no evidence that he constructively received funds, either in ordering Merrill Lynch to wire funds to FPFC, or in any other respect.

As such, we conclude that McGaugh did not have actual or constructive receipt of any assets from his IRA during the 2011 tax year and so did not take a distribution from his IRA during that time. The judgment of the Tax Court is therefore AFFIRMED.