157 T.C. No. 10

UNITED STATES TAX COURT

ANDREW MCNULTY AND DONNA MCNULTY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1377-19.                              Filed November 18, 2021.


Each P established a self-directed individual retirement account
(IRA) under I.R.C. sec. 408 and directed assets held in the IRA to
invest in a single-member limited liability company (LLC). P-W was
the manager of the LLC that her IRA invested in. She directed the
LLC to purchase American Eagle (AE) coins and took physical
possession of the coins. R determined that P-W received taxable
distributions equal to the cost of the AE coins in the year P-W
received physical custody of them. There is no dispute that the value
of the coins is equal to their cost. P-H directed his IRA to invest in
AE coins and a condominium through an LLC. He conceded that he
received taxable distributions from these transactions but contested
I.R.C. sec. 6662(a) penalties for the failure to report the distributions.

Held: P-W received taxable distributions from her self-directed
IRA equal to the cost of the AE coins upon her receipt of the coins.

Held, further, Ps are liable for I.R.C. sec. 6662(a) penalties for
substantial understatements of income tax attributable to their failure
to report taxable distributions from their IRAs.


**Served 11/18/21**

Kathryn S. Windsor, Cory J. Bilodeau, and Thomas P. Quinn, for petitioners.

Molly H. Donohue and Nina P. Ching, for respondent.

OPINION

GOEKE, Judge: Respondent determined income tax deficiencies of $250,558 and $18,094 for taxable years 2015 and 2016, respectively, attributable to unreported taxable distributions from petitioners' respective self-directed individual retirement accounts (IRAs). He also determined that petitioners were liable for section 6662(a)[1] accuracy-related penalties for both years. The parties have settled issues relating to the tax treatment of the distributions from Mr. McNulty's IRA except for whether petitioners are liable for the penalties attributable to underpayments resulting from the unreported distributions.

The remaining issues are whether Mrs. McNulty received taxable distributions from her IRA; we hold she did; and whether petitioners are liable for section 6662(a) penalties; we hold they are.

------

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), 26 U.S.C., in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some amounts are rounded.

## Background

The parties have submitted this case for decision without trial under Rule 122. The facts have been stipulated or are otherwise undisputed and included in the record. See Rule 122(a).

Petitioners resided in Rhode Island when they timely filed their petition. They resided there during the years at issue and timely filed joint tax returns for 2015 and 2016. Both petitioners were employed professionals during the years at issue. Mr. McNulty was a plant manager for a sailcloth manufacturer, and Mrs. McNulty was a registered nurse.

### 1. Petitioners' Self-Directed IRAs

During 2015 petitioners decided to establish self-directed IRAs. Before doing so they researched self-directed IRAs online including having the IRA invest in American Eagle (AE) coins through an LLC owned by the IRA. During 2015 and 2016 Mr. McNulty used funds from his IRA to invest in a condominium and AE coins through an LLC structure. He engaged in prohibited transactions under section 4975 with respect to his IRA. During 2015 he received taxable IRA distributions of $295,554 and reported $1,595 of the distributions in gross income. During 2016 he received taxable distributions of $21,862 and did not report any amount in gross income.

In August 2015 Mrs. McNulty purchased services from Check Book IRA, LLC (Check Book), through its website, that included assistance in establishing a self-directed IRA and forming an LLC to which she would transfer IRA funds through purchases of membership interests and then purchase AE coins using IRA funds. During 2015 Check Book's website advertised that an LLC owned by an IRA could invest in AE coins and IRA owners could hold the coins at their homes without tax consequences or penalties so long as the coins were "titled" to an LLC. There are in the record no certificates of ownership for the AE coins or any other documentation that establishes legal title.

On August 19, 2015, Mrs. McNulty established a self-directed IRA using Check Book's services and named Kingdom Trust Co. (Kingdom Trust) the IRA custodian. Kingdom Trust is an independent qualified custodian under the Investment Advisers Act of 1940. On August 24, 2015, Check Book formed Green Hill Holdings, LLC (Green Hill). Green Hill's articles of organization, which were filed with the secretary of state of Rhode Island on August 25, 2015, state that Green Hill is a single-member LLC that is a disregarded entity for Federal tax purposes and its sole initial member was Mrs. McNulty's IRA.

Petitioners were appointed Green Hill's initial managers and were the managers during 2015 and 2016. Petitioners' personal residence is Green Hill's

principal place of business. Green Hill opened a bank account over which petitioners had signatory authority. With Check Book's assistance, Green Hill obtained a Federal taxpayer identification number.

2.    Funding of Mrs. McNulty's IRA

Mrs. McNulty exercised sole control over her IRA's investment decisions. She funded the IRA through direct transfers from two qualified retirement accounts: an individual retirement annuity with MetLife (MetLife annuity) and an employer-sponsored section 401(k) profit-sharing retirement plan (401(k)). Upon Mrs. McNulty's instruction $378,487 was transferred from the MetLife annuity to her IRA during 2015 and $48,375 from the 401(k) during 2016. Petitioners did not report any part of these transfers as gross income.

Mrs. McNulty instructed Kingdom Trust to use her IRA funds to purchase membership interests in Green Hill. The IRA purchased membership interests on three occasions during 2015 and 2016 (Green Hill investments). For each investment Mrs. McNulty instructed Kingdom Trust to transfer the purchase price of the membership interests from the IRA to Green Hill's bank account. In turn, Mrs. McNulty, as the LLC's manager, had Green Hill use almost all of the funds to purchase AE coins from Miles Franklin, Ltd. (Miles Franklin), an authorized coin

dealer. The funds to purchase the coins were transferred from Green Hill's bank account to Miles Franklin.

The invoices from Miles Franklin list Green Hill as the purchaser. However, the shipping labels identified Mrs. McNulty individually or along with her IRA as the recipient of the shipments. The coins were shipped to petitioners' personal residence and were stored in a safe there (safe) along with coins purchased with funds from Mr. McNulty's IRA and coins purchased by petitioners directly (collectively, non-IRA assets).[2] The AE coins purchased with funds from Mrs. McNulty's IRA, through Green Hill, were labeled as such.

The first Green Hill investment and coin purchase occurred in August through September 2015 with the funds transferred from the MetLife annuity. Mrs. McNulty instructed Kingdom Trust to purchase 375,000 membership units of Green Hill at $1 per unit for an investment of $375,000. The funds for the purchase were wired from the IRA to Green Hill's bank account. Mrs. McNulty then had Green Hill purchase 320 one-ounce AE gold coins for $374,000 from Miles Franklin (2015 AE gold coins), and $374,000 was wired from Green Hill's bank account to Miles Franklin. Miles Franklin shipped the coins to petitioners'

---

[2]A full inventory of the items in the safe is not part of the record.

residence, addressed to "Donna McNulty Green Hill", where they were stored in the safe.

The second Green Hill investment and AE coin purchase occurred in late January through February 2016 with IRA funds that had been transferred from the 401(k). Mrs. McNulty instructed Kingdom Trust to purchase 43,274.70 membership units of Green Hill at $1 per unit for an investment of $43,274.70. Kingdom Trust wired $43,274.70 from the IRA to Green Hill's bank account. Mrs. McNulty had Green Hill use part of the funds to purchase 2,000 one-ounce AE silver coins for $37,380 (2016 AE silver coins), and $37,380 was wired from Green Hill's bank account to Miles Franklin. Miles Franklin shipped the coins to petitioners' residence, to "Green Hill * * * FBO Donna McNulty", where they were stored in the safe.

In August 2016 Green Hill used $6,731 of the funds remaining in its bank account from the MetLife annuity and 401(k) transfers to purchase four one-ounce AE gold coins, two one-quarter-ounce AE gold coins, and one one-tenth-ounce AE gold coin (2016 AE gold coins). A payment of $6,746 for the AE coins plus insured shipping was wired from Green Hill's bank account to Miles Franklin. Miles Franklin shipped the coins to "Donna McNulty" at petitioners' residence, where they were stored in the safe.

The third Green Hill investment occurred in November to December 2016. Around November 20, 2016, Mrs. McNulty instructed Kingdom Trust to purchase 6,898.92 membership units of Green Hill at $1 per unit for an investment of $6,898.92. Approximately one week later, she instructed the custodian of her 401(k) to transfer $5,101 from her 401(k) to her IRA. Thereafter, $6,989.92 was wired from Mrs. McNulty's IRA to Green Hill's bank account. There was no purchase of AE coins after this investment.

3.     Yearend Valuations and Reporting for Mrs. McNulty's IRA

For each year at issue Miles Franklin provided a yearend valuation of the AE gold coins that it sold. It did not provide a valuation for the AE silver coins. It valued the 2015 AE gold coins as of December 31, 2015, at $347,680 and valued the 2015 and 2016 AE gold coins as of December 31, 2016, at $381,022.

Kingdom Trust required Mrs. McNulty to provide a yearend valuation of her IRA's assets. She completed a valuation form that she submitted to Kingdom Trust on which she identified herself as Green Hill's sole owner and represented Green Hill's value as $347,680 and $388,047 for 2015 and 2016, respectively. As of yearend 2015 and 2016, Green Hill's bank account had balances of $993 and $6,899, respectively. Mrs. McNulty omitted the bank account balance on the 2015

valuation form and omitted the value of the 2016 AE silver coins on the 2016 valuation form.

Kingdom Trust filed Form 5498, IRA Contribution Information, with the Internal Revenue Service (IRS) for 2015 and 2016, reporting the IRA's fair market values of $349,856 and $388,247, respectively. The 2015 Form 5498 omitted Green Hill's yearend bank account balance, and the 2016 Form omitted the value of the 2016 AE silver coins. Kingdom Trust did not have any role in the management of Green Hill, the purchase of the AE coins, or the administration of Green Hill's assets or the IRA assets.

4.    Returns and Audit

Petitioners' 2015 and 2016 tax returns were prepared by a certified public accountant (C.P.A.). Petitioners did not seek or receive advice from the C.P.A. about the tax reporting with respect to their self-directed IRAs or their physical possession of AE coins purchased using funds from their IRAs or the LLC through which Mr. McNulty's IRA held the condo. Nor did they disclose to their C.P.A. that they had physical possession of the AE coins at their residence.

On October 30, 2018, respondent issued to petitioners a notice of deficiency for 2015 and 2016 in which he determined that they each received taxable distributions from their IRAs that they failed to report. He also determined that

they were liable for section 6662(a) and (b)(1) and (2) accuracy-related penalties for both years for underpayments due to substantial understatements of income tax and, alternatively, negligence or disregard of rules or regulations, attributed to their failure to report the distributions. He determined that petitioners each received taxable distributions upon their receipt of the AE coins equal to the costs of the coins, including, with respect to Mrs. McNulty, taxable distributions of $374,000 and $37,380 for 2015 and 2016, respectively.

## Discussion

For purposes of section 408, an IRA means a trust created or organized for the exclusive benefit of an individual or his beneficiaries but only if the written governing instrument creating the trust meets certain enumerated requirements. Sec. 408(a). One requirement is that the IRA be a trust that is administered by a trustee that acts as a fiduciary. Id. para. (2). Mrs. McNulty's IRA is a custodial account. A custodial account may be treated as a trust for purposes of section 408 if it satisfies the requirements of section 408(a). Id. subsec. (h).

The trustee must be a bank (as defined in section 408(n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which it will administer the trust will be consistent with the requirements of section

408.[3] Id. subsec. (a)(2). For a person to qualify as a trustee, the person must demonstrate by written application to the Commissioner that it meets the requirements set forth in the regulations for a trustee. Sec. 1.408-2(e)(1), Income Tax Regs. The applicant "must demonstrate in detail its ability to act within the accepted rules of fiduciary conduct." Id. subparas. (2) (defining a trustee), (5) (setting forth the requirements for a nonbank trustee).

The trustee must keep separate and distinct records with full information on each IRA. Id. subpara. (5)(vii)(A). If assets require safekeeping, the trustee must deposit them into an "adequate vault" and keep a permanent record of deposits and withdrawals from the vault. Id. subdiv. (v)(B). The IRA asset cannot be commingled with other property except in a common trust fund or common investment fund. Sec. 408(a)(5); sec. 1.408-2(b)(5), Income Tax Regs.

Respondent determined that Mrs. McNulty's receipt of the AE coins constituted taxable distributions equal to their purchase price. The value of assets distributed from an IRA is included in the distributee's gross income. See sec. 408(d)(1) (providing that the amount received as a distribution from an IRA must

---

[3]Sec. 408(n) defines a bank as "a corporation which, under the laws of the State of its incorporation, is subject to supervision and examination by the Commissioner of Banking or other officer of such State in charge of the administration of the banking laws of such State."

be included in gross income and is taxable in the manner provided in section 72).

The parties do not dispute that the value of the AE coins equaled their cost.

Respondent argues that Mrs. McNulty should be treated as having possession of the AE coins irrespective of Green Hill's existence, her status as its manager, and its purported ownership of the coins. Petitioners counter that the AE coins were assets of Green Hill and Mrs. McNulty's physical receipt of them did not constitute taxable distributions from her IRA. The parties' arguments reveal numerous disagreements including whether Mrs. McNulty or her IRA was Green Hill's sole member, who owned the AE coins, who held legal title to the AE coins, whether AE coins are bullion, whether the AE coins were commingled with non-IRA assets, and who can have physical possession of the AE coins purchased with IRA funds.[4] We resolve this case on the answer to the last question and hold that Mrs. McNulty had taxable distributions from her IRA when she received physical custody of the AE coins irrespective of her status as Green Hill's manager.

An owner of a self-directed IRA is entitled to direct how her IRA assets are invested without forfeiting the tax benefits of an IRA. McGaugh v. Commissioner, T.C. Memo. 2016-28, at *9, aff'd, 860 F.3d 1014 (7th Cir. 2017). A self-directed

_____

[4]Respondent concedes that Mrs. McNulty has not engaged in a prohibited transaction under sec. 4975 with respect to her IRA, its investment in Green Hill, or the purchase of AE coins.

IRA is permitted to invest in a single-member LLC. Swanson v. Commissioner, 106 T.C. 76 (1996); Ellis v. Commissioner, T.C. Memo. 2013-245 (holding that an IRA's investment in a newly formed LLC was not a prohibited transaction because the LLC did not have any members when the investment was made and thus was not a disqualified person at that time), aff'd, 787 F.3d 1213 (8th Cir. 2015). However, IRA owners cannot have unfettered command over the IRA assets without tax consequences. It is on the basis of Mrs. McNulty's control over the AE coins that she had taxable IRA distributions.

A qualified custodian or trustee is required to be responsible for the management and disposition of property held in a self-directed IRA. Sec. 1.408-2(e), Income Tax Regs. A custodian is required to maintain custody of the IRA assets, maintain the required records, and process transactions that involve IRA assets. See sec. 408(h) and (i); sec. 1.408-2(e)(4), (5)(i)(2), (iii), (vii), Income Tax Regs. The presence of such a fiduciary is fundamentally important to the statutory scheme of IRAs, which is intended to encourage retirement savings and to protect those savings for retirement. Independent oversight by a third-party fiduciary to track and monitor investment activities is one of the key aspects of the statutory scheme. When coins or bullion are in the physical possession of the IRA owner (in whatever capacity the owner may be acting), there is no independent oversight that

could prevent the owner from invading her retirement funds. This lack of oversight is clearly inconsistent with the statutory scheme. Personal control over the IRA assets by the IRA owner is against the very nature of an IRA.

Mrs. McNulty had complete, unfettered control over the AE coins and was free to use them in any way she chose. This is true irrespective of Green Hill's purported ownership of the AE coins and her status as Green Hill's manager.[5] Once she received the AE coins there were no limitations or restrictions on her use of the coins even though she asserts on brief that she did not use them. While an IRA owner may act as a conduit or agent of the IRA custodian, she may do so only as long as she is not in constructive or actual receipt of the IRA assets. See Ancira

---

[5]Petitioners argue that respondent disregards Green Hill's existence. The Court of Appeals for the First Circuit, to which this case is appealable absent a stipulation to the contrary, has rejected use of the substance-over-form doctrine to recharacterize the form of a Roth IRA's investment in a domestic international sales corporation (DISC). Benenson v. Commissioner, 887 F.3d 511, 523 (1st Cir. 2018), rev'g Summa Holdings, Inc. v. Commissioner, T.C. Memo. 2015-119; see also Summa Holdings, Inc. v. Commissioner, 848 F.3d 779, 785 (6th Cir. 2017), rev'g T.C. Memo. 2015-119. Benenson involved whether the Roth IRA's receipt of DISC dividends was an excessive contribution in violation of the limits of sec. 219. It did not address the fiduciary or custodial requirements of IRAs. Moreover, respondent does not disregard Green Hill. Mrs. McNulty chose for Green Hill to be a disregarded entity for Federal tax purposes. Petitioners have not established that Mrs. McNulty should be entitled to disavow her chosen form. See Complex Media, Inc. v. Commissioner, T.C. Memo. 2021-14, at *64 (setting forth standards under which taxpayers may try to disavow the form of a transaction). Finally, resolution of the issues here does not depend on Green Hill's status as a disregarded entity or its separate legal existence.

v. Commissioner, 119 T.C. 135, 137-140 (2002) (holding no taxable distribution occurred when the IRA owner personally received a check that he could not negotiate, the funds were then used to acquire stock, and the stock certificate was issued in the IRA's name); McGaugh v. Commissioner, at *13-*14 (holding no taxable distribution occurred even if a stock certificate was in the IRA owner's possession but it issued in the IRA's name and thus the owner could not realize any benefits from it and did not have constructive receipt of IRA assets); Dabney v. Commissioner, T.C. Memo. 2014-108 (holding a taxable distribution occurred when real estate was titled in the IRA owner's name).

An owner of a self-directed IRA may not take actual and unfettered possession of the IRA assets. It is a basic axiom of tax law that taxpayers have income when they exercise complete dominion over it. See Commissioner v. Banks, 543 U.S. 426, 434 (2005); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Constructive receipt occurs where funds are subject to the taxpayer's unfettered command and she is free to enjoy them as she sees fit. Ancira v. Commissioner, 119 T.C. at 138-139. Mrs. McNulty's possession of the AE coins is a taxable distribution. Accordingly, the value of the coins is includible in her gross income. Petitioners' arguments to the contrary would make permissible a situation that is ripe for abuse and that would undermine the

fiduciary requirements of section 408. Mrs. McNulty took possession of the AE coins and had complete control over them. Accordingly, she had taxable distributions from her IRA.

1.      Section 408(m) Flush Text

Alternatively, petitioners argue that section 408(m) provides an exception to the section 408 custodial requirements for the AE coins, thus allowing Mrs. McNulty to take physical possession of them.[6] Respondent counters that there is no such exception. Generally, section 408(m) prohibits IRAs from investing in collectibles as defined in section 408(m)(2) and treats an IRA's investment in collectibles as a taxable distribution equal to the cost of the collectibles. In general, a collectible is defined to include any coin. Id. subpara. (D). Certain coins and bullion as described in section 408(m)(3) are excluded from the definition of collectible, thus allowing IRAs to invest in them.

Section 408(m)(3) provides:

> (3) Exception for certain coins and bullion.--For purposes of this subsection, the term "collectible" shall not include--

> (A) any coin which is--

---

[6]The LLC structure allows petitioners to argue that Kingdom Trust was the IRA custodian and complied with all sec. 408 custodial and fiduciary requirements. If we were to accept this argument, respondent would argue that Kingdom Trust's compliance with sec. 408 has not been established.

(i) a gold coin described in paragraph (7), (8), (9), or (10) of section 5112(a) of title 31, United States Code,

(ii) a silver coin described in section 5112(e) of title 31, United States Code, [or]

\* \* \* \* \* \* \*

(B) any gold, silver, platinum, or palladium bullion of a fineness equal to or exceeding the minimum fineness that a contract market (as described in section 7 of the Commodity Exchange Act, 7 U.S.C. 7) requires for metals which may be delivered in satisfaction of a regulated futures contract,

if such bullion is in the physical possession of a trustee described under subsection (a) of this section.

Petitioners argue that the text at the end of section 408(m)(3) makes physical possession by a trustee a condition of an IRA's ownership of bullion. They further argue that the flush text applies only to bullion described in subparagraph (B), that AE coins are not bullion, and thus that a trustee is not required to have physical possession of AE coins. Respondent disagrees with petitioners on each of these points.

The flush text does not create an exception to the custodial and fiduciary requirements of section 408(a) irrespective of whether it applies to both subparagraphs (A) and (B) or whether AE coins are bullion. Congress has amended section 408(m) on three occasions to exclude certain coins and bullion

from the definition of "collectible". First, in 1986 Congress allowed IRAs to invest in certain coins minted by the United States Mint. This amendment coincided with the Mint's 1986 launch of the AE coin program. Tax Reform Act of 1986, Pub. L. No. 99-514, sec. 1144, 100 Stat. at 2490. In 1988 it allowed IRAs to invest in certain coins issued by States and in 1997 to invest in bullion and certain platinum coins. Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, sec. 6057, 102 Stat. at 3698; Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 304, 111 Stat. at 831. Congress added the flush text in 1997 when it revised section 408(m)(3) to add subparagraph (B) to allow IRAs to invest in bullion.

Statutory interpretation begins with the text of the statute, and we may consider legislative intent when the text is ambiguous. CRI-Leslie, LLC v. Commissioner, 147 T.C. 217, 224 (2016), aff'd, 882 F.3d 1026 (11th Cir. 2018). Both parties argue that section 408(m)(3) is unambiguous and that its plain text supports their own positions. They also argue that legislative history of section 408(m) supports their own interpretations.

The plain text of the statute is that an IRA's bullion that is not in the physical possession of a trustee is a collectible. The flush text does not address the fiduciary or custodial requirements of section 408(a), and we do not interpret it to

create an exception to those requirements in the absence of express wording that does so. In matters of statutory interpretation, "[w]e assume that Congress is aware of existing law when it passes legislation." Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). Statutory interpretation must take into account "the broader context of the statute as a whole." Util. Air Regulatory Grp. v. EPA, 573 U.S. 302, 321 (2014). There is no evidence of legislative intent to discontinue the fiduciary requirements generally applicable to IRAs for IRA investments in coins or bullion.[7] The flush text did not add the custodial requirements; they already existed. It is section 408(a) and the regulations thereunder that impose the custodial and fiduciary requirements.

According to petitioners' argument, the flush text negates the basic requirement of section 408(a) that there be a trustee that acts as a fiduciary and

---

[7]We are mindful not to place weight on the statements of individual legislators while considering legislative history. See Garcia v. United States, 469 U.S. 70, 76 (1984); Zucker v. Rodriguez, 919 F.3d 649, 660 (1st Cir. 2019). We note, however, that the statements of Senators James McClure and Steven Symms support our decision here. Senator McClure stated that an IRA owner's personally holding coins would make "it difficult to police whether or not the investment existed", that an investment in coins "would have to be held by a trustee and could not be held by the individual investor", that the 1986 amendment allowing IRA investments in AE coins "does not change * * * any of the rules governing control over IRA investments", and that "[a]ll the rules that apply to other IRA investments will also apply to the gold and silver coinage." 132 Cong. Rec. 14537 (1986). Similarly, Senator Symms stated that "[t]he amendment requires that the coins be held by a trustee, just as any other asset in an IRA." Id.

administers IRA assets. We will not apply such a negative inference to override the basic fiduciary and custodial requirements of section 408(a) that are fundamental to the retirement savings scheme, particularly in the absence of clear statutory text. The flush text does not create an exception to the well-established rules that IRA assets must be held by a trustee and that an IRA owner who takes possession of IRA assets receives a taxable distribution. Accordingly, Mrs. McNulty's receipt of each purchase of the AE coins paid for with her IRA funds was a taxable distribution pursuant to section 408(d).

2.    Prohibition Against Commingling

Section 408(a)(5) provides that "[t]he assets of the trust will not be commingled with other property except in a common trust fund or common investment fund." See also sec. 1.408-2(b)(5), (e)(5)(v), Income Tax Regs. The safe was not a common trust fund or a common investment fund and was not administered as such for purposes of section 408(a)(5). See sec. 1.408-2(b)(5)(ii), (e)(5)(vi), (viii)(C), Income Tax Regs.

Respondent argues that Mrs. McNulty violated the prohibition against commingling IRA assets when the AE coins were stored in the safe with non-IRA assets. He argues that the commingling results in taxable distributions even if Mrs. McNulty's physical custody of the AE coins did not. Petitioners argue that there

was no commingling because the AE coins purchased using the IRA funds were labeled as such before they were placed in the safe. We question whether labeling is sufficient to satisfy the Code's prohibition against commingling or whether storage in a safe satisfies the requirement that assets requiring safekeeping be kept in an adequate vault. However, we do not need to resolve this issue as Mrs. McNulty's physical possession of the AE coins resulted in taxable distributions irrespective of whether commingling occurred.

3.     Section 6662(a) Accuracy-Related Penalties

Section 6662(a) and (b)(2) imposes an accuracy-related penalty for any portion of an underpayment that is attributable to a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d). Petitioners' understatements attributable to their failures to report their IRA distributions in gross income were substantial for both years at issue. Accordingly, they will be liable for the section 6662(a) penalty for each year unless they establish that they should not be.

The section 6662(a) penalty will not apply to any portion of an underpayment where the taxpayers establish that they acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1). A determination of

reasonable cause and good faith is made on a case-by-case basis taking into account all pertinent facts and circumstances, with the most important factor being the taxpayers' efforts to assess their proper liability. Sec. 1.6664-4(b), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of the law that is reasonable in the light of all the facts and circumstances. Id. Taxpayers have the burden to come forward with persuasive evidence that they acted with reasonable cause and in good faith. Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

We have refused to impose a penalty where the issue is one of first impression and the taxpayer's position was reasonably debatable, Williams v. Commissioner, 123 T.C. 144, 153-154 (2004), or the statute at issue was not entirely clear, Hitchins v. Commissioner, 103 T.C. 711, 719-720 (1994), so long as the taxpayer made a reasonable attempt to comply with tax law. Reasonable reliance on professional advice may also constitute reasonable cause. Such reliance requires that the advice be based upon all pertinent facts, and advice cannot constitute reasonable cause if the taxpayer failed disclose relevant facts. Sec. 1.6664-4(c)(1)(i), Income Tax Regs.

Petitioners argue that they researched the LLC structure and reasonably concluded that they could take custody of AE coins purchased through an LLC

with IRA funds without tax consequences. They argue that there was conflicting information, including the IRS' own guidance, about whether the flush text of section 408(m)(3) applies to AE coins and whether taxpayers may take physical possession of AE coins when they are held through the IRA's ownership of an LLC. They also contend that Mr. McNulty did not know that he had engaged in a prohibited transaction when petitioners filed their returns.

The parties have not stipulated what petitioners' research entailed. They stipulated exhibits of three versions of Check Book's website from three dates during 2015, implying that petitioners' research included a review of the website at some point during 2015. Check Book's website advertised that taxpayers could purchase AE coins with their IRA funds and obtain physical possession of the coins without any tax consequences. The parties also stipulated part of Kingdom Trust's website, which states that AE coins must be held in a depository.

Petitioners also attached to their brief a printout of part of the IRS website from 2019, which they assert supports their argument that the flush text of section 408(m)(3) requires a trustee to have physical possession only of bullion. Respondent objects to the printout because it was not stipulated as an exhibit. We sustain respondent's objection. The printout is not part of the record. Moreover, petitioners have not established that they read the IRS website or any IRS guidance

before they filed their 2015 or 2016 return. The printout would offer little support for a reasonable cause defense as it merely states that IRAs can invest in bullion that is in the physical possession of a trustee. It does not state that taxpayers can take physical custody of AE coins held through the IRA's ownership of an LLC.

Respondent asserts that petitioners' engagement of Check Book's assistance in setting up Mrs. McNulty's IRA and Green Hill does not present a reasonable cause defense. Petitioners have not argued that Check Book's online services are professional advice upon which they were entitled to rely. Rather, they argue in vague terms that they performed research about an IRA investment in AE coins through an LLC structure, without identifying the source or specific results of the research. They did not stipulate their purported research other than stipulating parts of Check Book's and Kingdom Trust's websites as exhibits.

We question whether Check Book's website and/or services could constitute professional advice upon which a reasonable person could rely for purposes of section 6664(c)(1). See sec. 1.6664-4(c)(2), Income Tax Regs. (defining advice). Check Book's website is an advertisement of its products and services, and a reasonable person would recognize it as such and would understand the difference between professional advice and marketing materials for the sale of products or services. Petitioners have not provided any evidence that sets forth Check Book's

qualifications to provide professional tax advice. Nor was Check Book disinterested. It benefited financially from petitioners' purchase of its services. See 106 Ltd. v. Commissioner, 136 T.C. 67, 79 (2011) (stating that reliance on an adviser who participated in structuring the transaction, i.e., a promoter, is not reasonable cause), aff'd, 684 F.3d 84 (D.C. Cir. 2012).

Petitioners did not seek or receive any advice from their C.P.A., who prepared their 2015 and 2016 returns, regarding their self-directed IRAs. They failed to disclose the relevant information to their C.P.A. Such a failure to disclose pertinent facts shows a lack of good faith in tax reporting; and on the basis of this failure we conclude that petitioners have not established that they acted reasonably or in good faith. Petitioners are both professionals. They liquidated nearly $750,000 from their existing qualified retirement accounts to invest in a questionable internet scheme without disclosing the transactions to their C.P.A. They are not entitled to the reasonable cause defense, and we sustain the penalties for both years.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.  To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.